**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA, EVANSVILLE DIVISION**

| | | |
|---|---|---|
| WILLIAM HURT, DEADRA HURT, | ) | |
| ANDREA HURT, & DEBBIE HURT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-00092-JMS-WGH |
| | ) | |
| EVANSVILLE POLICE DEPARTMENT | ) | The Honorable Jane Magnus-Stinson |
| DETECTIVES JEFF VANTLIN, JACK | ) | |
| SPENCER, WILLIAM ARBAUGH, and JASON | ) | |
| PAGETT, DETECTIVE SERGEANTS LARRY | ) | |
| NELSON and RICHARD BLANTON, | ) | |
| and LIEUTENANT DAN DEYOUNG, | ) | |
| CITY OF EVANSVILLE, KENTUCKY | ) | |
| STATE POLICE OFFICERS MATTHEW WISE | ) | |
| and ZACHARY JONES, and | ) | |
| KENTUCKY MEDICAL EXAMINER | ) | |
| AMY BURROWS-BECKHAM, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS**

NOW COME Plaintiffs William Hurt, Deadra Hurt, Andrea Hurt, and Debbie Hurt, by

and through their attorneys, Loevy & Loevy, and responding in opposition to the Motion for

Partial Judgment on the Pleadings filed by Defendants City of Evansville, Jeff Vantlin, Jack

Spencer, William Arbaugh, Jason Pagett, Larry Nelson, Richard Blanton, and Dan DeYoung (the

"Evansville Defendants") [Doc. 69] and the joinder thereto filed by Defendants Matthew Wise

and Zachary Jones (the "KSP Defendants") [Doc. 72], state as follows:

**INTRODUCTION**

In June 2012, Plaintiffs William Hurt, Deadra Hurt, and Andrea Hurt were falsely

arrested and maliciously prosecuted for the murder of their foster uncle, a crime they did not

commit. Not only did the three young siblings not commit this crime, but the "crime" itself never occurred: tragically, their uncle had committed suicide by jumping off the Twin Bridges a short distance from where his body was found. No physical evidence ever connected any of the teenagers to their uncle's death; to the contrary, all of the evidence Defendants collected during their investigation demonstrated that Plaintiffs had absolutely no involvement in their uncle's passing. Plaintiffs' false arrests, unlawful detentions and malicious prosecutions were based on false confessions concocted and coerced by the Defendants after extremely harsh multi-hour interrogations, during which threats were made to Plaintiffs and their family. William, Deadra, and Andrea were ultimately cleared of any involvement in their uncle's death, but not before they were each unlawfully detained in Vanderburgh County Jail, subjected to baseless criminal prosecutions, and publicly defamed in their community as murderers. They, along with their mother Debbie Hurt, filed this lawsuit seeking redress for the injuries they suffered and continue to suffer as a result of Defendants' egregious misconduct.

Before the Court are a motion for partial judgment on the pleadings filed by the Evansville Defendants [Doc. 69], and a one-paragraph joinder motion filed by the KSP Defendants [Doc. 72]. With limited exception for certain of Plaintiffs' state law claims, none of the arguments has merit. For the reasons below, Plaintiffs respectfully request that the Court deny both motions and allow Plaintiffs' claims to proceed.

## LEGAL STANDARD

The Federal Rules of Civil Procedure only require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir.

2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). As this Court has observed, "[t]he intent of the liberal notice pleading system is to ensure that claims are determined on their merits." *Lockhart v. ExamOne World Wide, Inc.*, 904 F. Supp. 2d 928, 947 (S.D. Ind. 2012) (quoting *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 779 (7th Cir. 2007)).

"A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). Plaintiffs need only pass "two easy-to-clear hurdles" to survive Defendants' motions: (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" does not mean the Court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, the complaint must merely "give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis in original).

At this stage, "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The court may grant a Rule 12(c) motion "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).

**BACKGROUND**

On June 17, 2012, the body of Marcus Golike was found floating in the Ohio River. Doc. 1 at ¶1, 18. Tragically, Mr. Golike had taken his own life. After decades of mental illness and multiple suicide attempts, he had jumped off the Twin Bridges a short distance from where his body was found. *Id*. at ¶¶1, 17, 19. Because Mr. Golike's body was technically located within Kentucky's jurisdiction, the Kentucky State Police ("KSP") joined the Evansville Police Department ("EPD") in its investigation. *Id*. at ¶ 20. Defendant Blanton, a supervisor and Sergeant within the EPD, assigned Defendant Vantlin to investigate. *Id*. Defendant Vantlin quickly took over as the lead detective and he, along with KSP Defendants Jones and Wise, decided to investigate the death as a murder and set out to "solve" it. *Id*. at ¶21.

After learning that Mr. Golike had visited the home of his foster sister, Plaintiff Debbie Hurt ("Debbie"), Defendants determined that Debbie's children must have committed the "murder" and set out to prove it. They had no basis for this assumption: Debbie's children – including 18 year old Plaintiff William Hurt ("William"), 19 year old Plaintiff Deadra Hurt ("Deadra"), and 16 year old Plaintiff Andrea Hurt ("Andrea") – loved Mr. Golike and considered him family. *Id*. at ¶22, 27. Moreover, there was no evidence collected from Mr. Golike's body or the area where he was found that suggested in any way that William, Deadra, or Andrea had laid a hand on him. *Id*. at ¶28.

On the afternoon and evening of June 28, 2012, Defendants Vantlin and Jones subjected William to multiple hours of harsh, coercive interrogation at the Evansville Police Department. *Id* at ¶30. During the interrogation they repeatedly accused William of having murdered his uncle and told him he was lying as he insisted, for more than 2.5 hours, that he was innocent and had no involvement in his uncle's death. *Id*. at ¶31. William was telling the truth: he loved his

uncle and had no involvement in his death. *Id* at ¶32. The Defendants refused to accept William's protestations of innocence and insisted that not only was William guilty, but that his siblings had all participated in the murder of their uncle. *Id*.

Over the course of several hours the Defendants fed William details about where Mr. Golike's body was found and how he was dressed, and they concocted a story about how William and his siblings had beaten and strangled Mr. Golike on the side of the road, tied him up, and thrown him in the Ohio River. *Id* at ¶33. This was a fantastical story, wholly unsupported by any evidence. Mr. Golike's body was not beaten, and there was no evidence that he had been tied up. Moreover, for the Defendants' story to be true, and for the children to have thrown Mr. Golike in the river as the Defendants contended, Mr. Golike's body would have had to float upstream five miles against the current in order to end up where it was ultimately found. *Id* at ¶34. Nevertheless, the Defendants pressed William to admit to it, making promises of lenience if he confessed and threatening to send him to prison for the rest of his life if he did not. *Id*. at ¶¶ 36, 37. To further induce William's acquiescence, the Defendants told William that if he simply confessed he would be able to go home. *Id* at ¶38. Finally, unable to withstand the relentless pressure and believing that if he simply told them what they wanted to hear he would be able to go home, William began to parrot back the details the Defendants had fed him. *Id*. at ¶40. Every detail William recounted in his coerced confession was first provided to him by Defendants. *Id*. at ¶41. It took William several tries until the Defendants were satisfied with his account. As the interrogation ended, he asked them, "Did I get most of the facts right?" *Id*. at ¶42. Based solely on William's involuntary coerced confession, in which he was forced to implicate himself and his siblings (including Deadra and Andrea), the Defendants arrested him for the murder of Mr. Golike and transported him to Vanderburgh County Jail. *Id*. at ¶43.

After securing William's false confession, Defendants Vantlin, Jones, Wise and Nelson brought Deadra into an interrogation room and told her she was not free to leave. *Id* at ¶44. Defendants told Deadra that William had confessed and that he had implicated her in Mr. Golike's death. They then recounted the details of William's coerced confession and insisted that she corroborate it. *Id* at ¶45. Deadra insisted that she was innocent and that she played no role in Mr. Golike's death. *Id*. at ¶46. Defendants rejected her innocence pleas and told her that if she did not confess to the same story William had given them, she would get the death penalty and her siblings and mother would go to jail. *Id*. at ¶¶47-49. As Deadra broke down in sobs, the Defendants told her that she would "hurt family members" if she didn't confess to William's account. *Id*. at ¶50. Unable to withstand the threats to her and her family, Deadra began to answer their questions with the facts they said William had provided. *Id*. at ¶51. When the information Deadra was providing did not precisely match William's account, the Defendants would re-ask the question until she gave the answer they were looking for. *Id*. at ¶52. On the basis of Deadra's coerced false confession, Defendants arrested Deadra for the murder of her foster uncle and transported her to Vanderburgh County Jail.

Defendants Vantlin and Spencer used William and Deadra's coerced confessions as the basis for knowingly false affidavits, which they used to fraudulently obtain a search warrant for the Hurt family home. *Id*. at ¶54. Defendants Nelson, Spencer, and an EPD SWAT team executed the warrant and raised the home. There, they arrested Andrea at gunpoint and transported her to the Evansville Police Department. *Id*. at ¶55. Defendants Vantlin, Wise and Jones interrogated Andrea in the same manner as they had done with William and Deadra. *Id*. at ¶¶56-57. Despite the pressure and abuse, Andrea never confessed. *Id*. at ¶58. Shortly before 2:30AM on June 29, 2012, the Defendants stopped their interrogation and arrested Andrea for

the murder of Mr. Golike. *Id.* at ¶59. Defendant Vantlin requested and received permission to transfer 16-year-old Andrea to Vanderburgh County Jail. *Id.* at ¶60.

The Vanderburgh County Prosecutor's Office ultimately declined to press charges against Andrea. After seven days spent in an adult jail, Andrea was released to her home. *Id.* at ¶60.

None of the details Defendants had concocted during their interrogations of William and Deadra were corroborated by any extrinsic evidence. *Id.* at ¶61. Faced with this dilemma, the Defendants set about to fabricate evidence proving the siblings' guilt. *Id.* at ¶62. Shortly after notifying Defendant Burrows-Beckham of William and Deadra's arrests and so-called confessions, Defendant Burrows-Beckham concluded that Mr. Golike's death was caused by an assault and strangulation. This conclusion was belied by the physical injuries Mr. Golike had sustained, but it buttressed the false confessions Defendants had elicited from William and Deadra. *Id.* at ¶63. Defendants also set about to fabricate police reports corroborating the false accounts they had fed William and Deadra. *Id.* at ¶64. Defendants never recorded or disclosed those fabrications. *Id.*

Four months after her wrongful arrest, Deadra's confession was thrown out by the judge overseeing her criminal case on the basis that Defendants' multiple threats to Deadra and her family's safety and security violated Deadra's rights under the Fifth and Fourteenth Amendments. *Id.* at ¶66. With only the fabricated circumstantial evidence remaining to suggest Deadra's guilt, the prosecutors dismissed all charges against her without prejudice. *Id* at ¶67.

With William as the lone remaining defendant, the Defendants redoubled their efforts to secure his conviction. *Id.* at ¶68. Among the most damning fabrication was Defendant Pagett and Arbaugh's false police report, created on the eve of trial, documenting inculpatory statements William had allegedly made to them on June 29, 2012. *Id.* at ¶70. On information and belief,

Evansville police officers routinely fabricated false police reports, including on the eve of trial, to include false evidence of wrongdoing. *Id*. at ¶72. Defendants' fabrication was completely false; William had made no such statements. *Id*. at ¶70-71.

William's trial began on February 19, 2013. *Id*. at ¶73. The jury was shown a video recording of William's interrogation and heard testimony from the Defendants and other Evansville police officers conceding that no evidence was found to support the details contained in the confession. *Id*. at ¶74. Defendants also testified to their fabrications, which provided circumstantial evidence of William's guilt. *Id*. at ¶7. When the jury went back to deliberate, they requested a copy of the video recorded interrogation. *Id*. at ¶77. After watching that recording, the jury returned a not guilty verdict on the murder charge. *Id*. at ¶77.

William, Deadra, and Andrea each suffered considerable damages as a result of their having been wrongfully accused of a murder they did not commit. The experience – which would be horrifying for anyone – was made considerably worse for them on account of their youth, and continues to impact their lives. *Id* at ¶¶ 78-87.

**ARGUMENT**

The thrust of Defendants' arguments is that Plaintiffs have not pled sufficient factual allegations in support of their stated claims. Plaintiffs respectfully disagree. Plaintiffs' complaint contains nearly eighty paragraphs of detailed factual allegations that provide Defendants notice of their claims and establish Plaintiffs' right to relief under both federal and Indiana law. *Tamayo*, 526 F.3d at 1084. Moreover, as this Court has recognized, although "[f]acts that substantiate the claim ultimately must be put into evidence, [] the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.' That's the difference between fact pleading (which the courts of Illinois use) and claim pleading under Rule 8." *Id*. (citing

*Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923–24 (7th Cir. 2007)). To state a claim, a plaintiff's complaint need only make out a "plausible account" of his entitlement to relief. *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' complaint comfortably meets this standard.

## I.       Plaintiffs' Claims Under 42 U.S.C. § 1983 All Survive.

Defendants ask this court to enter judgment on the pleadings as to (i) Plaintiffs' *Monell* claim against the City of Evansville, (ii) all of Plaintiffs' federal claims as to Defendants Nelson, Blanton, and DeYoung (the "supervisory defendants"), (iii) Plaintiffs' federal malicious prosecution and due process claims, and (iii) Plaintiffs' conspiracy claim against all of the individual Defendants. Each of Plaintiffs' federal claims is sufficiently pled and should be permitted to proceed to a determination on the merits.

### A.       Plaintiffs Adequately Plead A *Monell* Claim.

In seeking to dismiss Plaintiffs' *Monell* claim, Defendants argue that Plaintiffs' complaint describes no more than a "straightforward claim that police officers, arresting the Plaintiffs, violated Plaintiffs' Federal Constitutional rights." *See* Doc. 70 at 4-5. Not so. The complaint plausibly suggests that the constitutional violations Plaintiffs experienced, at the hands of a multitude of Evansville police officers (including supervisors within the Evansville Police Department) over the course of nearly one year, were animated by the City of Evansville's failure to train, supervise, and discipline its officers, such that the City is liable for Plaintiffs' constitutional injuries under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

The bar for pleading a *Monell* theory is not high. "Since the U.S. Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), district Courts in the Seventh Circuit have applied the following standard to official capacity claims brought pursuant to § 1983: 'an official capacity claim can survive even

conclusory allegations that a policy or practice existed so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing.'" *Unger v. Blevins-Foster*, No. 1:12-CV-00948-LJM, 2013 WL 2456073, at *2 (S.D. Ind. June 6, 2013) (quoting *Riley v. County of Cook*, 682 F.Supp.2d 856, 861 (N.D. Ill. 2010)). *See also Stanfield v. Dart*, 2011 WL 1429172, *4-5 (N.D. Ill. Apr. 14, 2011) (allegations that sheriff "engaged in a policy, practice, and pattern of sexual harassment, failure to respond to complaints, and retaliation against those who complain about unlawful conduct" sufficient to state claim) (citing *Lanigan v. Vill. of East Hazel Crest.*, 110 F.3d 467, 480 (7th Cir. 1997), for the rule that "boilerplate allegations" are sufficient to state a *Monell* claim); *Sanders v. Sheehan*, 2010 WL 2990121, at *2 n.1 (N.D. Ill. July 26, 2010) ("[I]n the context of section 1983 municipal liability, . . . plaintiffs are not held to a heightened pleading requirement nor are they required to plead specific facts to prove the existence of a municipal policy.") (collecting cases); *Gilbert ex rel. James v. Ross*, 2010 WL 145789, at *2 (N.D. Ill. Jan. 11, 2010) ("Plaintiff need not plead particular facts upon which he bases his claim of an official policy or custom, and a short and plain statement that a government entity's official policy or custom caused his injury is sufficient to survive a motion to dismiss."); *Garrett v. Dart*, 09 C 1398, 2010 WL 2136670, at *3 (N.D. Ill. July 8, 2010) (same). Plaintiffs' allegations against the City of Evansville clearly satisfy this standard.

Plaintiffs allege that the City of Evansville maintained policies and practices that caused Plaintiffs to suffer violations of their constitutional rights. Count VII sets forth Plaintiffs' *Monell* theories, as follows:

> ¶ 129. As described more fully above, in causing Plaintiffs to suffer constitutional violations described in this Complaint, the EPD Defendants were acting pursuant to the City of Evansville's policies and practices, including the specific method pursuant to which the interrogations were conducted, police reports were created, and arrests and detentions were effectuated. Defendants' misconduct was also taken with the knowledge and participation of municipal policymakers.

¶ 130.  As a matter of both policy and practice, the Evansville Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

¶ 131.  The Evansville Police Department and the City of Evansville have failed to act to remedy these abuses despite knowledge of the same, thereby causing the types of injuries alleged here.

[Doc. 1] Plaintiffs explicitly aver that the Evansville Police Department's policies and practices caused their injuries and were the moving force behind those injuries. That is all that Plaintiffs are required to state to put the City of Evansville on notice of their claim. *Lanigan*, 110 F.3d at 480.

Plaintiffs' complaint avers a litany of factual allegations underpinning their *Monell* claim. Plaintiffs describe abuses inflicted on them by Defendants during each of their interrogations; arrests effectuated with manufactured (and knowingly baseless) probable cause; unlawful detentions in the Vanderburgh County Jail as a result of the Defendants' misconduct, and fabrications and falsification of evidence when the criminal prosecutions appeared to be faltering. *See generally* Doc. 1 at ¶¶ 1, 2, 3, 4, 5, 20, 21, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 40, 42, 43, 44, 45, 47, 48, 49, 50, 52, 53, 54, 55, 56, 57, 59, 60, 61, 62, 63, 64, 68, 69, 70, 71.

The complaint also explicitly alleges that at least some of the complained-of misconduct was known to be a widespread practice within the Evansville Police Department. *See, e.g.*, Doc. 1 at ¶72 ("On information and belief, EPD officers routinely fabricated false police reports, including on the eve of trial, by including false evidence of wrongdoing."). Crediting those allegations and drawing all reasonable inferences in Plaintiffs' favor, as the Court must at this juncture, the complaint states a plausible claim that the City of Evansville had a widespread policy or practice of violating citizens' constitutional rights by fabricating false evidence in order

to secure convictions, and that the City's policy was the moving force behind Plaintiffs' false arrests, due process violations, and malicious prosecutions. *See* Doc. 1 at ¶130.

Although these allegations sufficiently plead a *Monell* claim, by way of example and for illustrative purposes only, Plaintiffs additionally state (consistent with their pleadings) that within weeks of Plaintiff William Hurt's criminal trial – where Defendant Arbaugh had an eve-of-trial "recollection" that William had confessed his guilt while being transported from the Evansville police station to jail after his arrest (a fact that Defendant Arbaugh never recorded on any document or reported to anyone within the prosecutor's office) – Defendant Arbaugh had a virtually identical eve-of-trial "recollection" in a separate criminal matter, where he maintained that the criminal defendant had made an inculpatory statement while the defendant was being transported from the police station to the jail after his arrest (a fact that Defendant Arbaugh never recorded on any document or reported to the prosecutor's office).[1] These additional allegations, offered only for illustrative purposes, convincingly show that "there might be a set of facts consistent with [Plaintiffs'] allegations in the complaint" sufficient to support their *Monell* claim. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004). That is all Plaintiffs need to establish at this juncture.

---

[1]  The Seventh Circuit has expressly authorized plaintiffs opposing a Rule 12(c) motion to "submit materials outside the pleadings to illustrate the facts that the [plaintiff] expects to be able to prove," calling such illustrations "prudent" because of the "turmoil concerning civil pleading standards stirred up by [*Iqbal*] and [*Twombly*]." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citations omitted). In so doing, plaintiffs are not restricted to submitting only those types of documents the moving party may submit (i.e., the complaint, documents attached to the complaint, documents referred to in the complaint, and information subject to proper judicial notice). *Id*. Instead, they have "much more flexibility in opposing a [Rule 12(c)] motion," and may both submit additional materials and "elaborate on [] factual allegations so long as the new elaborations are consistent with the pleadings." *Ibid*. In accordance with the Seventh Circuit's directive in this regard, Plaintiffs again reiterate that they are tendering this additional information to the Court for illustrative purposes, and not to convert Defendants' Rule 12(c) motion to one for summary judgment.

With regard to Plaintiffs' *Monell* theory relating to Defendants' unconstitutionally coercive interrogations, it is reasonable to anticipate that both the individual Defendant Officers and the City of Evansville will take the position that the interrogations were conducted properly and in accordance with the policies, practices, and training of the Evansville Police Department. Although assuredly not dispositive of what any other party's position on this issue will be, and tendering this information strictly for illustrative purposes and with no desire or intent to convert Defendants' motion into a Rule 56 motion for summary judgment, Plaintiffs note that Defendant Vantlin has already stated as much. *See* Ex. A (Vantlin Answer to Pls.' First Set of Requests to Admit, Nos. 1-6).[2] To the extent the Evansville Defendants do take this position in this litigation, and a jury ultimately disagrees and finds that the Evansville police officers did violate Plaintiffs' constitutional rights during the interrogations, the jury could further conclude that the City of Evansville is liable for those constitutional violations because it maintained a policy or custom of carrying out interrogations in such a manner.

In a separate attempt to dismiss Plaintiffs' *Monell* claim, the City contends that the incidents described in Plaintiffs' complaint are the type of "single incident" or "random event" that might compel the dismissal of a *Monell* claim at this juncture. *See* Doc. 70 at 7-8 (citing cases). This argument also fails.

The allegations in this case bear no resemblance to those cases that hold that a plaintiff cannot recover under *Monell* for "one specific incident in which the plaintiff suffered a deprivation." *See* Doc. 70 at 8. Plaintiffs' complaint describes repeated acts of misconduct committed by numerous Evansville police officers in their engagement with multiple citizens: in conducting Plaintiffs William, Deadra, and Andrea's interrogations, in effectuating Plaintiffs'

---

[2]  Again, Plaintiffs tender this to the Court strictly for illustrative purposes, in accordance with *Geinosky*. *See supra* n.1.

unlawful arrests, and in the investigation that followed those unlawful arrests, which involved the fabrication and falsification of evidence for the explicit purpose of furthering Plaintiffs' baseless prosecutions. The complaint alleges that several supervisors within the Evansville Police Department not only condoned the conduct, but also personally participated in it. This supports Plaintiffs' claims that the individual Defendant Officers acted unlawfully pursuant to widespread policies and practices, and that the City of Evansville's failure to train, supervise, and discipline its officers directly caused the constitutional violations alleged by Plaintiffs. *See, e.g.*, *Diaz v. Hart*, 08 C 5621, 2010 WL 849654, at *8 (N.D. Ill. Mar. 8, 2010) (allegations that plaintiff experienced "more than one instance of delay and denial of medical treatment" lent plausibility to allegations of systemic policy of deliberate indifference to medical needs); *Listenbee v. City of Harvey*, 11 C 3031, 2013 WL 5567552, at *3 (N.D. Ill. Oct. 9, 2013) (allegation that officers used excessive force against plaintiff near police headquarters without fear of discovery lent plausibility to *Monell* claim); *id.* at *4 (allegation that "multiple police officers or staff saw [plaintiff's] condition and failed to provide any help or relief" lent plausibility to allegations of a systemic policy of deliberate indifference).

Plaintiffs' only obligation at this juncture is to plead sufficient factual content that allows the Court to draw the reasonable inference that the City of Evansville is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Plaintiffs respectfully submit that they have done so. The Evansville Defendants' motion as to Plaintiffs' *Monell* claim should be denied.[3]

---

[3] To the extent the Court determines that Plaintiffs' *Monell* claim is not sufficiently pled, Plaintiffs would request leave to amend their complaint to cure any deficiencies the Court identifies. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success.").

**B.    Plaintiffs Plead Viable Claims Against Defendants Nelson, Blanton and DeYoung.**

Defendants contend that there is no supervisory liability under § 1983 and that, as a result, all of Plaintiffs' federal claims against Defendants Nelson, Blanton, and DeYoung must be dismissed. This is incorrect on two counts. First, the United States Supreme Court and the Seventh Circuit recognize a plaintiff's ability to recover under a supervisory liability theory. Second, Plaintiffs seek to recover against these Defendants both for their direct involvement in the misconduct and on account of their special status as supervisors. *See* Doc. 1 (Counts I-V pled against the Individual Defendants – including Defendants Nelson, Blanton and DeYoung – for their direct involvement in the constitutional deprivations alleged; Count VI pled against Defendants Nelson, Blanton and DeYoung under a supervisory liability theory). Because each of these claims is adequately pled, none of Plaintiffs' federal claims should be dismissed against Defendants Nelson, Blanton, or DeYoung.

**1.    Plaintiffs have a cause of action for supervisory liability.**

Defendants contend that no "supervisory liability" cause of action exists under § 1983. *See* Doc. 70 at 9-10. This misstates the law. What *Iqbal* and its progeny have all rejected is the notion that *vicarious liability* – i.e., a supervisor's "mere knowledge" of her subordinate's misconduct – could render a supervisor personally liable for her subordinate's constitutional violation. *See Iqbal*, 556 U.S. at 677; *see id*. at 676 (holding that government officials may not be held liable for the unconstitutional conduct of their agents under a theory of *respondeat superior*); *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (rejecting plaintiff's attempt to hold prison warden liable because the warden had not played any role in the alleged violation). Section 1983 <u>does</u> impose liability on a supervisor-defendant where he "[knew] about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what

15

they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (citation omitted). Put another way, "a supervisor may still be liable for the acts of his subordinates if he approves of the conduct and the basis for it. … They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Village of Peoria Heights, Illinois*, 662 F.3d 866, 869–70 (7th Cir. 2011) (quotations and citations omitted). *See also Snyder v. Smith*, 7 F. Supp. 3d 842, 863-64 (S.D. Ind. 2014) (setting forth the Seventh Circuit standard for imposing supervisors' liability in § 1983 cases and denying motion to dismiss plaintiff's claim on that count); *Robinson v. Leonard-Dent*, No. 3:12-CV-417-PPS, 2013 WL 5701067, at *3 (N.D. Ind. Oct. 18, 2013) (denying motion to dismiss individual claims against supervisors on the ground that "the requisite responsibility for the constitutional deprivation can take several forms" and citing *Matthews*, 675 F.3d at 708; *Backes*, 662 F.3d at 869–70).

Plaintiffs properly plead a supervisory liability claim against Defendants Nelson, Blanton, and DeYoung. Plaintiffs allege that these supervisor-defendants had personal knowledge of their subordinates' misconduct and – at the very least – acted with deliberate, reckless indifference. *See* Doc. 1 at ¶124. Reading Plaintiffs' claim in Count VI in concert with the first 87 paragraphs of their factual allegations – including allegations that these Defendants participated alongside and/or approved their subordinate officers' misconduct – raises Plaintiffs' right to relief "above the speculative level" and compels the denial of Defendants' motion to dismiss this claim. *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).[4]

---

[4] Where Plaintiffs possessed the requisite knowledge, many of the complaint's allegations specifically identify the individual Defendants. *See, e.g.*, Doc. 1. at ¶¶ 20, 21, 24, 25, 30, 31, 32, 33, 34, 35, 36, 37, 38, 40, 41, 43, 44, 45, 47, 48, 49, 50, 52, 53, 54, 55, 56, 57, 58, 59, 60, 63, 70, 71. In addition to the allegations against specific individual Defendants, the complaint also contains allegations of misconduct for which all of the Defendants are jointly responsible. With respect to those paragraphs, each of the individual Defendants is accused of that particular allegation. Under Seventh Circuit law, an allegation explicitly directed at all or a particular subgroup of defendants is sufficient to plead personal involvement after *Iqbal*, even if each defendant comprising the group is not named individually in each separate

### 2. Plaintiffs adequately plead Defendants Nelson, Blanton and DeYoung's liability for Counts I-V.

Defendants provide only one basis for dismissing Counts I-V against Defendants Nelson, Blanton, and DeYoung: they claim that these Defendants cannot be held liable for those claims under a theory of supervisory liability. *See* Doc. 70 at 9-10. As discussed *supra* at Section B(1), that argument fails; Defendants can be held liable for their involvement as supervisors.

More important, Counts I-V of Plaintiffs' complaint claim that each of these Defendants is directly liable for his personal participation in the specific constitutional violations alleged – not for his liability as a supervisor in connection with these claims. *See* Doc. 1 at ¶16 (defining the "Individual Defendants" to include Defendants Nelson, Blanton and DeYoung); ¶¶89-98 (pleading federal malicious prosecution claim against all of the Individual Defendants); ¶¶99-102 (pleading Fourth Amendment claim against all of the Individual Defendants); ¶¶103-108 (pleading due process claim against all of the Individual Defendants); ¶¶109-113 (pleading failure to intervene against all of the Individual Defendants); ¶¶115-122 (alleging that all of the Individual Defendants conspired to violate Plaintiffs' rights). No Defendant has moved to dismiss Counts I-V on any basis other than the failed supervisory-liability theory argument proffered by Defendants Nelson, Blanton, and DeYoung. Accordingly, Counts I-V and Count VI should not be dismissed against Defendants Nelson, Blanton, and DeYoung.

### 3. Defendants' qualified immunity argument fails.

None of the Evansville Defendants or the KSP Defendants seek relief from Counts I-V on the ground that they are entitled to qualified immunity on these federal claims. And with good reason: to do so would be futile. Each Count states a constitutional right that was recognized well

---

paragraph. *Brooks*, 578 F.3d at 582 (finding a complaint alleging that all members of a group of defendants engaged in misconduct unobjectionable); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

before the misconduct Plaintiffs allege in this case. Only Defendants Nelson, Blanton and DeYoung advance an affirmative defense of qualified immunity, on the basis that no theory of "supervisory liability" exists under law. *See* Doc. 70 at 12-13. That is incorrect. Well before June 2012, the law recognized that liability may attach to supervisors based on their "deliberate, reckless indifference" to the actions of their subordinates. *See, e.g.*, *Backes*, 662 F.3d at 869–70. Defendants Nelson, Blanton and DeYoung's attempt to evade liability for Plaintiffs' federal claims on this basis fails.

As a general matter, the Seventh Circuit cautions district courts against making immunity decisions at this stage in the litigation. "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring). *See also Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate. The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.") (internal quotation and citation omitted). At the Rule 12(b)(6) stage of the proceedings, a plaintiff must only allege – not prove – the deprivation of a constitutional right. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008). "Even if later factual development complicates or erases entirely the picture painted by the Complaint, it is our task at this stage to take Plaintiff's well-pleaded allegations as true—for purposes of evaluating her claim as well as the affirmative defenses asserted against it." *Snyder*, 7 F. Supp. 3d at 867-68.

**C.    Plaintiffs State Viable Claims for Malicious Prosecution & Due Process Under 42 U.S.C. 1983.**

Defendants argue that Plaintiffs' federal malicious prosecution and due process claims fail because Indiana provides adequate state law remedies for those actions. *See* Doc. 70 at 13-

14. Defendants further submit that even though "both state law claims are barred by Indiana's law enforcement immunity … [t]he bar [] does not reinstate" Plaintiffs' claims. *Id*. at 14-15. Defendants fail to mention that the Seventh Circuit has unequivocally rejected those arguments, and that it has expressly recognized the viability of those federal claims because of the inadequacy of the state law remedies in Indiana: in *Julian v. Hanna*, 732 F.3d 842 (7th Cir. 2013) (malicious prosecution) and in *Belcher v. Norton*, 497 F.3d 742 (7th Cir. 2007) (due process). As the *Belcher* court explained, "[r]elegating the plaintiffs to this state statutory scheme would deprive them of any meaningful avenue to seek redress for the [due process] deprivation that they claim to have suffered." *Belcher*, 497 F.3d at 753. To that end, "[a] state cannot be permitted to create blanket immunities from federal suits for violations of federal law (such as the Fourteenth Amendment's due process clause)[.]" *Julian*, 732 F.3d at 848. In light of the binding Seventh Circuit precedent directly refuting Defendants' arguments, their motion to dismiss Plaintiffs' Fourteenth Amendment malicious prosecution and due process claims must fail.

Defendants' suggestion that Plaintiffs' claims are simply "a relabeled 'false arrest' claim" fares no better. *See* Doc. 70 at 15. The defendants in *Julian* attempted to make this argument and the Court rejected it as wholly meritless, reiterating that false arrest claims provide "remedies only for detention that occurs before formal charges kick off an actual prosecution … [constituting] only a fraction of the total damages attributable to [plaintiff's] malicious prosecution, for those damages accumulated over the entire period that began with his arrest and ended only when the charges against him were dismissed." *Julian*, 732 F.3d at 847. *See also Starks v. Moore*, No. 1:12-CV-1008-WTL-DML, 2015 WL 1825905, at *3 (S.D. Ind. Apr. 22, 2015) (recognizing plaintiff's federal malicious prosecution claim against Indiana police officers

and rejecting defendants' argument that it is "nothing more than a re-labeled claim for false arrest"). Plaintiffs' malicious prosecution claims are rooted in the protections provided by the Fourteenth Amendment and seek redress for the injuries they suffered following their false arrests. These claims survive.[5]

### D. Plaintiffs Adequately Plead A Conspiracy Claim Against All Defendants.

Defendants argue that Plaintiffs' allegations "lack the specificity or particularity required to prevail on a Section 1983 conspiracy claim," and submit that "Plaintiffs' *only* allegation that there was a conspiracy was their conclusory assertion that 'the Individual Defendants reached an agreement amongst themselves to frame Plaintiffs for the crime.'" *See* Doc. 70 at 15-16. Defendants miss the mark on both scores.

There is no heightened pleading standard for conspiracy claims. *See, e.g., Loubser v. Thacker*, 440 Fl3d 439, 442-43 (7th Cir. 2006); *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Walker v. Benjamin*, 293 F.3d 1030, 1039 (7th Cir. 2002). To prevail on their conspiracy claims, Plaintiffs need only show that Defendants were "voluntary participant[s] in a common venture" and understood "the general objectives of the scheme, accept[ed] them, and agree[d], either explicitly or implicitly, to do [their] part to further them." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1998). They do *not* need to allege or prove that Defendants "agreed on the details of the conspiratorial scheme or even know who the other conspirators are." *Id*. Plaintiffs' conspiracy claims may be alleged through circumstantial, rather than direct,

---

[5] Plaintiffs William Hurt and Deadra Hurt bring federal due process claims against the Defendants for their misconduct. Doc. 1 at Count III. A due process claim is not inherently a trial right: it may be invoked to redress deprivations of liberty (i.e. incarceration) between the time of the arrest and the point where the unlawful liberty deprivation ends. *See Patton v. Przybylski*, 822 F.2d 697, 700-01 (7th Cir. 1987) (citing cases). William and Deadra each suffered such deprivations of their liberty, and each of them brings a federal due process claim. To the extent this is not sufficiently clear from the language of Count III, *see* Doc. 70 at 14 n.2; *see id*. at 17-18, Plaintiffs respectfully request that the Court grant them leave to amend the Complaint.

allegations. *Geinosky*, 675 F.3d at 749; *Pisoni v. Illinois*, No. 12 C 0678, 2013 WL 2458522, at *7 (S.D. Ill. June 6, 2013) ("Plaintiffs are not required to make direct allegations of a conspiracy, but can allege circumstances that add up to a plausible account of a conspiracy." (internal quotation marks omitted)).

This Court need look no further than the Seventh Circuit's ruling in *Geinosky* to conclude that Plaintiffs' conspiracy claim is adequately pleaded. In *Geinosky*, the Seventh Circuit reversed the district court's dismissal of the plaintiff's conspiracy claim because, in looking at the complaint in its entirety, plaintiffs had alleged a "pattern of misconduct" by the defendants. *Geinosky*, 675 F.3d at 749. Although the complaint contained only "conclusory direct allegations of conspiracy," the misconduct allegations sufficiently stated plaintiffs' claim. *Id*. ("While the complaint makes only rather conclusory direct allegations of conspiracy, the complaint also alleges a pattern of harassment by several officers over a period of months. It is a challenge to imagine a scenario in which that harassment would not have been the product of a conspiracy. Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy. This complaint goes well beyond that.").

As in *Geinosky*, it is difficult "to imagine a scenario in which" the actions of the Evansville Defendants and the KSP Defendants "would not have been the product of a conspiracy." *Id*. The complaint alleges that all Defendants participated in a conspiracy to implicate William, Deadra, and Andrea in the murder of their foster uncle, and that the conspiracy began shortly before William's interrogation on June 28, 2012. Plaintiffs allege that the Defendants unconstitutionally coerced confessions from William and Deadra, and that when they failed in that endeavor with Andrea, they nevertheless arrested all three siblings despite knowing there was no lawful basis for any of the Plaintiffs' arrests. Plaintiffs allege that during

the course of their unlawful detentions, when none of the physical evidence was corroborating Defendants' manufactured confessions, the Defendants fabricated and falsified evidence in order to continue the Plaintiffs' prosecutions – an effort that intensified after the judge overseeing Deadra's criminal case threw out her confession on the ground that it was involuntary and unreliable, the product of Defendants' coercion and threats. Plaintiffs allege that as William's trial date neared, and no evidence Defendants could lawfully uncover implicated William in his uncle's death, the Defendants fabricated additional evidence, including an eve-of-trial "recollection" that William had made a guilty statement after the interrogation had concluded. To suggest that this coordinated and repeated misconduct was pure happenstance is highly implausible. Moreover, Plaintiffs have further alleged that in addition to personally participating in various acts of misconduct, Defendants Nelson, Blanton and DeYoung oversaw and encouraged the misconduct of their subordinates.

There is no denying that over the course of more than seventy paragraphs, Plaintiffs allege an agreement among fellow police officers working on the same case at the same time to use overly aggressive tactics to solve a "crime" at any cost. Taken as a whole, the complaint provides "a plausible account of a conspiracy," making dismissal improper. *See Geinosky*, 675 F.3d at 749; *see also Mendoza v. City of Chicago*, 2012 WL 3206602, at *3 (N.D. Ill. July 31, 2012) (complaint alleging simply that the "Defendants' conspiracy is evidenced by the insufficient investigation into the incident" and that the "Defendants made false statements to cover up" misconduct stated a plausible conspiracy claim). Drawing on its judicial "experience and common sense," this court can easily find Plaintiffs' conspiracy claim plausible. Defendants' motions to dismiss Plaintiffs' conspiracy claim should therefore be denied.

II.     **The Indiana Tort Claims Act Bars Some, But Not All, Of Plaintiffs' State Law Claims Against the Evansville Defendants.**

Defendants correctly note that the Indiana Tort Claims Act ("ITCA") provides absolute immunity to the Evansville Defendants under specific circumstances. Because some of those circumstances exist here, Plaintiffs agree that certain of their tort claims are barred and do not oppose the dismissal of their state law claims for malicious prosecution (Count IX), intentional infliction of emotional distress (Count X), and defamation (Count XI) against the Evansville Defendants.

Plaintiffs do, however, dispute three aspects of the Evansville Defendants' motion as to Plaintiffs' state law claims. First, the Evansville Defendants' summary contention that Plaintiff William Hurt's state law claims all fail because of the timing of his Notice of Tort Claim is premature, requires further factual development, and cannot be resolved on a Rule 12 motion. Second, the ITCA does not confer immunity for the false arrest/false imprisonment claim (Count VIII) and Plaintiffs' state law claims thus survive against not just the City of Evansville, but also the individual Evansville Defendants. Third, Plaintiffs' right to indemnification from the City of Evansville exists regardless of whether Plaintiffs' state law tort claims survive dismissal, in accordance with the plain language of Indiana Code § 34-14-4-1, and thus cannot be dismissed.

A.     **The Timeliness of Plaintiff William Hurt's Notice of Tort Claims Cannot Be Resolved At This Juncture.**

The Seventh Circuit has advised that it is "irregular to dismiss a claim as untimely" under Rule 12 because "a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Dismissal is only proper when, from the face of the complaint itself, "the existence of a valid affirmative defense is so plain . . . that the suit can be regarded as frivolous . . ." *Walker v. Thompson*, 288

F.3d 1005, 1009 (7th Cir. 2002). Those principals apply equally when a defendant asserts, as the Evansville Defendants do here, that a plaintiff has failed to comply with the ITCA notice requirement.

Another court in this District recently addressed the precise argument that Defendants make here. In *Antey v. Donohue*, defendants City of Evansville and an Evansville police officer filed a Rule 12(c) motion in which they asserted that the plaintiff had not timely complied with the ITCA notice requirement. No. 3:12-CV-00085-TWP-WGH, 2013 WL 466222, at *3-4 (S.D. Ind. Feb. 7, 2013). There, as here, the defendants asked the court to take judicial notice of the plaintiff's notice of tort claim, and to dismiss all of the plaintiff's state law claims on the ground that the notice was untimely. *Id*. The *Antey* court declined to consider the document tendered by defendants, noting that to do so would convert the Rule 12(c) motion to a motion for summary judgment. *Id*. The *Antey* court then discussed the purpose of a Rule 12(c) motion, stating:

> The purpose of a Rule 12(c) motion is to test the sufficiency of the plaintiff's complaint and identify defects in a plaintiff's claim, not the presence of a defendant's affirmative defense. *Taleyarkhan v. Purdue Univ.*, 837 F. Supp. 2d 965, 969 (N.D. Ind. 2011). "[P]laintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain any information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Only where a plaintiff admits all of the elements of an impenetrable defense, thus pleading herself out of court, may a complaint that otherwise states a claim be dismissed; however, omission of facts from her complaint which would ultimately defeat an affirmative defense does not justify dismissal. *Id*.; *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003).

*Id*. at *4. Because the plaintiff in that case had not pleaded herself out of court (i.e. admitted that her ITCA notice was untimely), the court denied defendants' motion, finding that additional factual development would be needed to determine whether there were "circumstances under which the notice period may be tolled[.]" *Id*. (citing *White v. Stuben Cnty., Ind.*, No. 1:11-CV-019, 2011 WL 4496504, at *14 (N.D. Ind. Sept. 27, 2011) (explaining circumstances under which the ITCA notice period may be tolled).

Although *Antey* is not binding, its reasoning applies equally here. As an initial matter, it is not clear that the notice of tort claim tendered by Defendants is a matter of public record subject to judicial notice, such that the Court can consider it without converting Defendants' motion to one for summary judgment. The *Antey* court was not persuaded by those defendants' assertion, and the one case Defendants cite here for that proposition, *Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998), involved a situation in which the court took judicial notice of historical treaties, which explicitly fell under the category of "historical records" that could be considered on a Rule 12 motion. The Court's ability to consider documents extrinsic to the pleadings at this juncture is a "'narrow exception' to the general rule barring consideration of materials outside the pleadings" and "exists to 'prevent parties from surviving a motion to dismiss by artful pleadings or by failing to attach relevant documents.'" *Henry v. Boston Hannah Chicago, LLC*, No. 14 C 9132, 2015 WL 3613715, at *3 (N.D. Ill. June 8, 2015) (quoting *188 L.L.C. v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Brownmark Films, L.L.C. v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)). "The exception is not 'intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment[.]'" *Henry*, 2015 WL 3613715, at *3 (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

Even if the Court grants Defendants' request that it take judicial notice of the May 29, 2013 letter filed as Exhibit A to its motion without converting the motion to one for summary judgment, Defendants' motion for judgment on the pleadings as to William's remaining state law claims[6] must still be denied. As the *Antey* court noted, this will not end the inquiry, because there are circumstances under which the ITCA notice period may be tolled. *Antey*, 2013 WL 466222,

---

[6]   As stated *supra*, Plaintiffs have agreed to dismiss their state law malicious prosecution, IIED, and defamation claims.

at *4. For example, Indiana Code § 34-13-3-8(a) states, "Except as provided in section 9 of this chapter, a claim against a political subdivision is barred unless notice is filed . . . within one hundred eighty (180) days after the loss occurs." Proceeding to section 9, the ITCA sets forth a separate notice requirement for incapacitated plaintiffs: "If a person is incapacitated and cannot give notice as required in section 6 or 8 of this chapter, the person's claim is barred unless notice is filed within one hundred eighty (180) days after the incapacity is removed." IC § 34-13-3-9. There are no allegations in the complaint that would permit this Court to resolve whether William was incapacitated during his unlawful incarceration at Vanderburgh County Jail, nor need there be: "[a] plaintiff filing suit against a governmental entity is not required to plead compliance with ITCA's notice requirement, because such requirement is not an element of the tort claim itself." *Waldrip v. Waldrip*, 976 N.E.2d 102, 113 (Ind. Ct. App. 2012) (citing *Thompson v. City of Aurora, Ind.*, 263 Ind. 187, 194-94 (1975)). Because the record is insufficient at this juncture to resolve whether William's incarceration rendered him incapacitated and prevented him from filing a notice of tort claim prior to May 2013, Defendants' motion must be denied on this basis alone, and William's state law claims for false arrest/false imprisonment (Count VIII), civil conspiracy (Count XII), respondeat superior (Count XIII), and indemnification (Count XIV) survive.

**B.     The Evansville Defendants Cannot Avail Themselves Of Immunity For Plaintiffs' State Law False Arrest Claims In This Case.**

Defendants concede that Plaintiffs' false arrest/false imprisonment claim survives against the City of Evansville, but appear to seek its dismissal as to the individual Evansville Defendants. If this is Defendants' position, it is incorrect.

Indiana Code § 34–13–3–3(8)(A) provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . .

26

(8) The adoption and enforcement of or failure to adopt or enforce: (A) a law (including rules and regulations) . . . **unless the act of enforcement constitutes false arrest or false imprisonment.**" (emphasis added). Plaintiffs' state law false arrest/false imprisonment claim (Count VIII) falls squarely within this provision. *See Becker v. City of Evansville*, No. 3:12-CV-182-WGH-TWP, 2015 WL 328895, at *34 (S.D. Ind. Jan. 26, 2015) ("The Defendants next argue that the ITCA shields both Elfreich and the City from liability on Becker's negligence claims. Under the ITCA's "law enforcement immunity" provision, government entities and agents acting within the scope of their employment are immune to liability stemming from their efforts to enforce the law "unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34–13–3–3(8)(A)."); *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1103-04 (S.D. Ind. 2008) (holding that "ITCA provides that neither a governmental entity nor a government employee acting within the scope of his employment is liable if a loss results from the adoption and enforcement of a law, 'unless the act of enforcement constitutes false arrest or false imprisonment.' Ind.Code § 34–13–3–3(8) . . . in addition to claims of false arrest or false imprisonment, the use of excessive force is not immunized conduct under Indiana law. Thus, if Defendants were acting within the scope of their employment, the only possible state law claims that McConnell would have would be false arrest, false imprisonment, or excessive force.") (internal citation omitted); *Alexander v. City of S. Bend*, 256 F. Supp. 2d 865, 875-76 (N.D. Ind. 2003) (holding that the ITCA notice provision applies to claims for false arrest and false imprisonment but that the ITCA does not confer immunity on governmental entities and their employees for those claims).

Because Plaintiffs' false arrest/false imprisonment claim cannot be denied, neither can their civil conspiracy claim (Count XII). Although "there is no independent cause of action for

civil conspiracy in Indiana," *Rosenbaum v. White,* 692 F.3d 593, 606 (7th Cir. 2012), "conspiracy may be a vehicle for recovery of damages from additional defendants if the plaintiff can establish that the defendants acted in concert with another party in the commission of an independent tort." *Snyder v. Smith*, 7 F. Supp. 3d 842, 876 (S.D. Ind. 2014). As discussed *supra* at Section I(D), Plaintiffs' factual allegations sufficiently plead a conspiracy claim. The Evansville Defendants' motion for judgment on the pleadings must fail as to those two state law claims.

### C. Defendants Improperly Deny Plaintiff William Hurt's Claim to Indemnification Under State Law.

Defendants do not contest the viability of Plaintiffs Deadra, Andrea, and Debbie's indemnification claim. They do, however, seek to extinguish William's claim on the ground that his notice of tort claim was not untimely. For the reasons discussed above, Defendants' motion to dismiss William's indemnification claim must be denied as premature. It should also be denied because another statutory provision makes indemnification available to plaintiffs.

Pursuant to Indiana Code § 34-13-4-1,

> If a present or former public employee . . . is or could be subject to personal civil liability for a loss occurring because of a noncriminal act or omission within the scope of the public employee's employment which violates the civil rights laws of the United States, the governmental entity (when the governmental entity defends or has the opportunity to defend the public employee) shall, subject to IC 34-13-3-4, IC 34-13-3-14, IC 34-13-3-15, and IC 34-13-3-16, pay: (1) any judgment (other than for punitive damages) of the claim or suit; or (2) any judgment for punitive damages, compromise, or settlement of the claim or suit if: (A) the governor, in the case of a claim or suit against a state employee; or (B) the governing body of the political subdivision, in the case of a claim or suit against an employee of a political subdivision; determines that paying the judgment for punitive damages, compromise, or settlement is in the best interest of the governmental entity. The governmental entity shall also pay all costs and fees incurred by or on behalf of a public employee in defense of the claim or suit.

This statutory scheme is mandatory, and it requires a governmental entity (here, the City of Evansville) to indemnify the officers it is defending in litigation. *See generally Estate of*

*Moreland v. Dieter*, 576 F.3d 691, 694-95 (7th Cir. 2009) (discussing contours of the mandatory statutory indemnification scheme).

**D.    The KSP Defendants Waive Any Argument Concerning Tort Claim Immunity.**

The KSP Defendants' joinder to the Evansville Defendants' Motion does nothing more than "adopt, affirm, and incorporate by reference [] the factual positions and legal arguments set forth" in the Evansville Defendants' motion. *See* Doc. 72. For the majority of the Evansville Defendants' arguments, the nexus is obvious: the KSP Defendants are not making *Monell* arguments or seeking to avail themselves of the Evansville Defendants' arguments on supervisory liability (because those claims do not apply to KSP Defendants Wise and Jones), but they are joining the Evansville Defendants' attempt to dismiss Plaintiffs' conspiracy claim (because Defendants Wise and Jones are equally implicated in that claim). The KSP Defendants' failure to even state whether they believe they are entitled to the protections of the Indiana Tort Claims Act, or to Kentucky sovereign immunity, or to some other mechanism for state law tort immunity – let alone to develop any such argument – constitutes a waiver on this issue. *See Lindh v. Dir., Fed. Bureau of Prisons*, No. 2:14-CV-151-JMS-WGH, 2015 WL 4086373, at *2 (S.D. Ind. July 6, 2015) ("As we have often said, it is not this court's responsibility to research and construct the parties' arguments.") (quoting *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011)); *Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010) (failure to adequately develop an argument results in waiver) (citing *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001)); *United States v. Elst*, 579 F.3d 740, 743 (7th Cir. 2009) ("Perfunctory and undeveloped arguments ... are waived.").

# CONCLUSION

Rule 8 is designed to ensure that cases are decided fairly on their merits, "not to debate finer points of pleading where opponents have fair notice of the claim or defense." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citing Fed. R. Civ. P. 8(e)). Plaintiffs' allegations concerning the misconduct undertaken by the Evansville Defendants and the KSP Defendants state plausible federal and state law claims against the Defendants and "'raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).

Accordingly, with the limited exceptions enumerated herein, Plaintiffs' claims should proceed to a determination on the merits. Plaintiffs respectfully request that this Court deny the Evansville Defendants' Motion for Partial Judgment on the Pleadings [Doc. #69] and the KSP Defendants' joinder thereto [Doc. #72] nearly in total, granting only the dismissal of Plaintiffs' state law claims for malicious prosecution, intentional infliction of emotional distress, and defamation against the Evansville Defendants. In the event the Court determines that any other claim is not sufficiently pled, Plaintiffs respectfully request that the Court dismiss that claim without prejudice and with leave to amend. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (holding that a claim should not be dismissed with prejudice and without leave to amend unless it is clear that an amended complaint would still fail to state a claim upon which relief could be granted).

RESPECTFULLY SUBMITTED,

/s/ Rachel Steinback

Arthur Loevy
Jon Loevy
Russell Ainsworth
Cindy Tsai
Rachel Steinback
Steven Art
Loevy & Loevy
312 North May Street, Suite 100
Chicago, Illinois 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Rachel Steinback, an attorney, hereby certify that on July 10, 2015, I served the foregoing **Plaintiffs' Consolidated Response in Opposition to Defendants' Motions for Partial Judgment on the Pleadings** upon all counsel of record via the CM/ECF filing system.

/s/ Rachel Steinback
Attorney for the Plaintiffs