UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| WILLIAM HURT, <br> DEADRA HURT, <br> ANDREA HURT, <br> DEBBIE HURT, <br><br>                *Plaintiffs*, <br><br> vs. <br><br> JEFF VANTLIN, <br> JACK SPENCER, <br> WILLIAM ARBAUGH, <br> JASON PAGETT, <br> LARRY NELSON, <br> RICHARD BLANTON, <br> DAN DEYOUNG, <br> CITY OF EVANSVILLE, <br> MATTHEW WISE, <br> ZACHARY JONES, <br> AMY BURROWS-BECKHAM, <br><br>                *Defendants*. | ) <br> ) <br> ) <br> ) <br> )   No. 3:14-cv-00092-JMS-WGH <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER ON DEFENDANTS' OBJECTION**

Presently pending before the Court are Defendants Matthew Wise and Zachary Jones' Objections, [Filing No. 64], to the assigned Magistrate Judge's Qualified HIPAA Protective Order, [Filing No. 60]. The remaining Defendants have asked to join in the pending objection, and the Court grants those requests. [Filing No. 65; Filing No. 67.] Plaintiffs oppose Defendants' Objection. [Filing No. 71.] For the following reasons, the Court sustains Defendants' Objection to the Magistrate Judge's Qualified HIPPA Protective Order, vacates that order, and issues an Amended Protective Order.

# I.
## APPLICABLE STANDARD

A pretrial, non-dispositive matter, such as a discovery motion, may be referred to the assigned magistrate judge for decision. Fed. R. Civ. Pro. 72(a). Any timely objections to the magistrate judge's order will be considered, and the Court will "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. Pro. 72(a). Under the clear error standard, the Court will not reverse the decision unless it is "left with the definite and firm conviction that a mistake has been committed." *Kanter v. C.I.R.*, 590 F.3d 410, 417 (7th Cir. 2009) (citation omitted).

# II.
## RELEVANT BACKGROUND

### A. Plaintiffs' Allegations

The following background is set forth from the relevant allegations in Plaintiffs' Complaint. [Filing No. 1.] At the time of the relevant events, Plaintiff William Hurt was 18 years old, Plaintiff Deadra Hurt was 19 years old, and Plaintiff Andrea Hurt was 16 years old. [Filing No. 1 at 4.] Plaintiff Debbie Hurt is William, Deadra, and Andrea's mother—Deadra is her biological daughter and she adopted William and Andrea.[1] [Filing No. 1 at 3; Filing No. 1 at 5; Filing No. 71 at 8.]

Plaintiffs allege that they were wrongfully targeted, arrested, and prosecuted for the June 2012 death of their uncle, Marcus Golike, whose body was found floating in the Ohio River. [Filing No. 1 at 2.] Plaintiffs allege that Mr. Golike actually committed suicide by jumping from

---

[1] The Court will refer to each Plaintiff by his or her first name to avoid confusion. Because it appears that only the medical records of William, Deadra, and Andrea are the subject of the underlying discovery dispute, the Court's general references to Plaintiffs in this Order do not include Debbie.

2

a bridge into the river. [Filing No. 1 at 3.] Plaintiffs allege that Defendants fabricated evidence, including police reports, to implicate them in Mr. Golike's death. [Filing No. 1 at 14-15.]

Plaintiffs allege that Defendants harshly interrogated William, accusing him of murdering Mr. Golike and lying to him about evidence. [Filing No. 1 at 9-10.] Plaintiffs allege that after several hours of interrogation, William implicated himself and his siblings in Mr. Golike's death and was arrested. [Filing No. 1 at 10-11.] Plaintiffs allege that Defendants then interrogated Deadra, told her the details to which William had confessed, and continued to interrogate her until she began answering their questions with the facts they said William had provided. [Filing No. 1 at 12.] Plaintiffs allege that Defendants used William and Deadra's confessions to obtain a search warrant and wrongfully arrest Andrea. [Filing No. 1 at 13.] Plaintiffs allege that Andrea never confessed, despite being interrogated. [Filing No. 1 at 13-14.] Plaintiffs contend that Defendants arrested Andrea based on her siblings' confessions. [Filing No. 1 at 13-14.]

Plaintiffs allege that seven days after Andrea was arrested, prosecutors declined to pursue charges against her and she was released. [Filing No. 1 at 14.] Plaintiffs allege that prosecutors dropped the charges against Deadra after the trial court suppressed her confession. [Filing No. 1 at 15.] Plaintiffs allege that prosecutors continued to maliciously prosecute William after the trial court did not suppress his confession, but that a jury ultimately found him to be not guilty. [Filing No. 1 at 16-17.]

Plaintiffs allege that they "each suffered considerable damages as a result of their having been wrongfully accused of a murder they did not commit." [Filing No. 1 at 17.] The contend that the "horrifying experience [was] made considerably worse because of their youth and their innocence." [Filing No. 1 at 17.] They allege that Deadra was wrongfully detained for five months and that William was unlawfully detained for seven months. [Filing No. 1 at 18.] They allege that

3

as a result of the Defendants' conduct, all three of them had trouble reintegrating to society and "suffered tremendous damages, including extreme emotional distress, physical pain and suffering, and reputational injury." [Filing No. 1 at 19.]

Plaintiffs filed their Complaint in this Court on June 27, 2014. [Filing No. 1.] They allege multiple claims under 42 U.S.C. § 1983, including claims for malicious prosecution, failure to intervene, conspiracy, supervisory liability, *Monell* liability, and claims for Fourth Amendment and due process violations. [Filing No. 1 at 19-27.] Plaintiffs also allege state law claims for false arrest/false imprisonment; malicious prosecution; intentional infliction of emotional distress; defamation of character; civil conspiracy; respondeat superior; and indemnification. [Filing No. 1 at 20-32.]

**B. Underlying Discovery Dispute**

On April 29, 2015, the Magistrate Judge held a telephonic conference and issued the following deadlines for briefing a discovery dispute that had been discussed: Plaintiffs were ordered to file a motion for protective order by May 15, 2015; any response was due on or before May 29, 2015; and any reply was due on or before June 5, 2015. [Filing No. 53.]

Plaintiffs filed their Motion for Protective Order on May 18, 2015, after obtaining a three-day extension to do so.[2] [Filing No. 57; Filing No. 59.] Plaintiffs asked for protection from a waiver Defendants asked them to sign, which would allow Defendants "to directly subpoena all of Plaintiffs' medical and mental health records since birth." [Filing No. 57 at 2 (referencing Filing No. 57-1).] Although Plaintiffs "acknowledge[d] that some limited discovery into their medical and mental health histories may be appropriate," they sought protection from "blanket discovery

---

[2] In granting Plaintiffs' extension request, the Court set Defendants' response deadline for June 1, 2015, and Plaintiffs' reply deadline for June 8, 2015. [Filing No. 59.]

into a lifetime of medical and mental health history without limitation." [Filing No. 57 at 2.] Plaintiffs submitted a proposed Qualified HIPAA Protection Order.[3] [Filing No. 58.] Plaintiffs proposed a five-year limit lookback for investigation into their medical records in their proposed order. [Filing No. 57 at 4; Filing No. 58 at 2.]

On May 26, 2015, before the June 1, 2015 deadline for Defendants to file their response to Plaintiffs' pending motion had passed, the Magistrate Judge signed Plaintiffs' proposed Qualified HIPAA Protection Order (the "Protective Order"). [Filing No. 60.] Defendants still filed their responses on June 1, 2015, believing that the Magistrate Judge had erroneously signed the Protective Order before Defendants' response deadline. [Filing No. 61 at 4; Filing No. 62; Filing No. 63.]

On June 5, 2015, the Magistrate Judge held a telephonic discovery conference concerning different discovery issues. [Filing No. 66.] Defendants stated at the end of the conference that they believed that the Court had erroneously entered Plaintiffs' proposed Protective Order before Defendants' deadline to respond had passed. [Filing No. 64 at 2-3.] The Magistrate Judge advised the parties that the Protective Order was not entered in error but, instead, would "get the parties started." [Filing No. 64 at 3.] The Defendants filed timely objections to the Qualified HIPAA Protective Order, [Filing No. 64; Filing No. 65], and those objections are now fully briefed for the Court's consideration.

---

[3] HIPAA permits protected health information to be revealed in response to a discovery request if the parties agree to a qualified protective order and have presented it to the Court, or if they have asked the Court for a protective order. 45 C.F.R. § 164.512(e)(1).

## III.
### DISCUSSION[4]

Defendants argue that the Magistrate Judge's entry of the Plaintiffs' Protective Order violated Defendants' right to due process because they did not have an opportunity to oppose it. [Filing No. 64 at 3-4.] Defendants specifically object to two aspects of the Protective Order—1) the requirement that any produced records must go directly to the attorney of record for the patient/party, not to the requesting party, and 2) the time frame limiting records from January 1, 2010 to the present. [Filing No. 64 at 4 (referencing Filing No. 60 at 2).] Defendants contend that the Protective Order is contrary to law because the Federal Rules of Civil Procedure are construed in favor of discoverability and Plaintiffs claim extensive emotional injuries. [Filing No. 64 at 5-8.] Defendants emphasize that the requested records are relevant for issues such as causation and damages, that Plaintiffs bear the burden of proof as the party opposing discovery, and that Plaintiffs have placed their medical, mental, and emotional health conditions "in controversy" by filing this action. [Filing No. 64 at 8-9.]

In response, Plaintiffs confirm that they "are not claiming that they sustained long-term physical injuries as a result of Defendants' misconduct." [Filing No. 71 at 7.] They contend that protective orders such as the one at issue herein are routine, that magistrate judges have broad discretion in facilitating discovery, and that the issued Protective Order balances the "sensitivity surrounding the disclosure of medical and mental health records with Defendants' discovery needs." [Filing No. 71 at 7.] Thus, Plaintiffs argue that the Magistrate Judge was well within his

---

[4] Plaintiffs argue that Defendants waived their challenges to the Protective Order by allegedly failing to develop their argument that the Protective Order is clearly erroneous beyond a "one-sentence, bare-bones recitation of the legal standard." [Filing No. 71 at 6.] Plaintiffs' argument is puzzling, considering that Defendants filed a fifteen-page Objection—at least ten pages of which are devoted to their arguments regarding why the Protective Order is contrary to law. [Filing No. 64.] Accordingly, the Court rejects Plaintiffs' waiver argument.

authority to enter an order limiting discovery of Plaintiffs' medical records to five years and allowing Plaintiffs' counsel to screen them first to "avoid inadvertent waiver of a privilege." [Filing No. 71 at 9.]

The Court will address the issues the parties' briefs raise in turn.

**A. Due Process**

The Court agrees with Defendants that it was clearly erroneous for the Magistrate Judge to issue the Protective Order before Defendants' deadline to respond to Plaintiffs' proposal had passed. Due process requires that the Court not base its decisions "'on issues raised in such a manner that the losing party never had a real chance to respond.'" *See Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, --- F.3d ---, 2015 WL 5117081, at *4 (7th Cir. 2015) (quoting *Smith v. Bray*, 681 F.3d 888, 903 (7th Cir. 2012)); *see also English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993) ("The opportunity to respond is deeply imbedded in our concept of fair play and substantial justice."). Thus, the Court concludes that under the circumstances at hand, it was clearly erroneous for the Magistrate Judge to enter the Protective Order before Defendants' deadline to respond to Plaintiffs' proposal had passed.

Defendants initially suggest that if the Court agrees with their due process argument, "the simplest solution appears to be to simply vacate the Protective Order and give the Plaintiff whatever additional time is needed to file their reply brief, if any." [Filing No. 64 at 4.] Defendants go on, however, to brief the substance of their specific objections to the Protective Order, [Filing No. 64 at 5-15], which is in addition to the merits briefs they filed by the deadline initially set to do so, [Filing No. 61; Filing No. 62; Filing No. 63]. In response to Defendants' Objection, Plaintiffs respond to the merits of Defendants' arguments regarding the substance of the Protective Order. [Filing No. 71.] Because all parties have now had an adequate opportunity to brief their

7

positions on the points of contention in the Protective Order, the Court will address the merits of the parties' arguments at this time.

### B. Gatekeeping Provision

The parties dispute the propriety of provisions in the Protective Order that Defendants contend erroneously make Plaintiffs the "gatekeepers of access to their medical history." [Filing No. 64 at 8.] Plaintiffs contend that these provisions are appropriate to "avoid inadvertent waiver of a privilege." [Filing No. 57 at 7; Filing No. 71 at 9.]

The challenged Protective Order provisions provide as follows:

> d. Any party seeking another party's [protected health information ("PHI")] shall instruct the entity to whom the records request is issued to produce all such records directly to the attorney of record for the patient/party in this matter and not to the requesting party.
>
> e. No person's PHI shall be produced to any other person or party unless and until the attorney of record for such patient/party has been afforded an opportunity to assert any applicable privilege or protection as to any part of those records. Once the attorney of record for the patient/party receives the PHI from a covered entity pursuant to another party's request under this order, such attorney shall have fourteen (14) days to review such records, to produce to the requesting party all records for which no privilege is invoked, and to produce to the requesting party a complete privilege log describing any records for which a particular privilege is invoked. Any challenges to the invocation of a privilege shall be discussed by the parties and, if no agreement can be reached, the requesting party may request an in camera review of such records by this Court to determine the appropriate applicability of such privilege.

[Filing No. 60 at 2.]

Plaintiffs contend that these provisions are appropriate to "avoid inadvertent waiver of a privilege." [Filing No. 57 at 7; Filing No. 71 at 9.] By their own characterization, however, the only case Plaintiffs cite as support for their position applies "where otherwise privileged information is *publicly disclosed to a third party*." [Filing No. 57 at 7 (emphasis added) (citing *Dellwood Farms, Inc. v. Cargill*, 128 F.3d 1122, 1126 (7th Cir. 1997)).] At issue here is discovery

8

between the parties to this litigation, not public disclosure. Thus, the Court concludes that it is clearly erroneous for the Protective Order to require the party requesting the records to instruct the entity to whom the request is issued to produce any records "to the attorney of record for the patient/party in this matter and not to the requesting party." [Filing No. 60 at 3.] Accordingly, the Court sustains Defendants' objections to Paragraphs 3(d) and 3(e) of the issued Protective Order. [Filing No. 64.]

### C. Five-Year Records Limitation

The parties also dispute the temporal limitation in the Protective Order limiting disclosure of medical and mental health records from January 1, 2010 to the present. [Filing No. 60 at 2] ("This Protective Order shall extend only to PHI documenting the medical and mental health of Plaintiffs from January 1, 2010 to the present.").] Defendants argue that the five-year limitation is clearly erroneous because Plaintiffs' allegations place their severe mental and emotional injuries at issue and discoverability is construed broadly. [Filing No. 64 at 5-14.] Plaintiffs contend that the Magistrate Judge exercised his broad discretion in limiting the scope of discovery and that there is no need for Defendants to obtain "a lifetime of Plaintiffs' medical and mental health records." [Filing No. 71 at 8.]

Federal Rule of Civil Procedure 26 governs discovery. It provides, in relevant part, that unless otherwise limited by the Court's order, "the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. Pro. 26(b)(1). "Relevant information need not be admissible

9

at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b)(1).

There is "a strong public policy in favor of disclosure of relevant materials." Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002). That said, the Court may "limit the scope of discovery if the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Id. (quotation omitted); see also Fed. R. Civ. Pro. 26(b)(2)(C). Before restricting discovery, however, the Court "should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case." Patterson, 281 F.3d at 681.

The Court recognizes that when the Magistrate Judge entered the Protective Order, he characterized the five-year limitation as a starting point for the parties, indicating that he may have envisioned revisiting the issue as the litigation progressed. Regardless, the Court is bound by precedent from the Seventh Circuit Court of Appeals holding that "[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." Doe v. Oberweis Dairy, 456 F.3d 704, 718 (7th Cir. 2006). Under those circumstances, "Rule 35 of the Federal Rules of Civil Procedure would entitle the defendant to demand that the plaintiff submit to a psychiatric examination" and "there is no greater invasion of privacy by making existing records available to the defendant." Id. at 718. In the interest of privacy, however, the Court can seal the plaintiff's records and limit their use at trial "to the extent that the plaintiff's interest in privacy outweighs the probative value of the information contained in the records." Id.

Plaintiffs' Complaint alleges that they have suffered emotional damages as a result of Defendants' actions, and they specifically demand damages for "severe emotional distress and anguish." [Filing No. 1 at 25.] In response to Defendants' Interrogatories, each of the Plaintiffs states that "as a result of [his or her] wrongful arrest, unlawful detention, and malicious prosecution," he or she has suffered emotional injuries, including "anxiety, pain, fear, sleeplessness, stress, nervousness, inability to trust, and humiliation." [*See* Filing No. 57-3 at 6 (Andrea's interrogatory responses); Filing No. 57-3 at 20 (William's interrogatory responses); Filing No. 57-3 at 35 (Deadra's interrogatory responses).] Plaintiffs have disclaimed any long-term physical injuries as a result of Defendants' alleged misconduct. [Filing No. 71 at 7.]

Plaintiffs "acknowledge that some limited discovery into their medical and mental health histories may be appropriate." [Filing No. 57 at 2.] The Court agrees, but concludes that under the circumstances presented herein, Plaintiffs have directly made their psychological states an issue in this litigation and, as a result, Defendants are "entitled to discover *any records* of that state." *Doe*, 456 F.3d at 718 (emphasis added). Thus, the Court concludes that the temporal limitation imposed by the Magistrate Judge in the Protective Order is clearly erroneous in this case. Thus, the Court sustains Defendants' objection to Paragraphs 3(b) of the issued Protective Order. [Filing No. 64.]

## IV.
### CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Defendants' requests to join Defendant Wise and Jones' Objection to the Magistrate Judge's Qualified HIPAA Protective Order. [Filing No. 65; Filing No. 67.] The Court **SUSTAINS** Defendants' Objection, [Filing No. 64], and **VACATES** the previously issued Qualified HIPAA Protective Order, [Filing No. 60].

11

The Court will issue an Amended Protective Order that does not contain Paragraphs 3(b), 3(d), and 3(e) of the previously issued Protective Order.

Dae: September 24, 2015

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Jason B. Bell
BELL, HESS & VAN ZANT, PLC
jbell@bhvzlaw.com

Edward A. Baylous, II
JUSTICE AND PUBLIC SAFETY CABINET
edward.baylous@ky.gov

Arthur Loevy
LOEVY & LOEVY
loevylaw@loevy.com

Cindy Tsai
LOEVY & LOEVY
cindy@loevy.com

Jonathan I. Loevy
LOEVY & LOEVY
jon@loevy.com

Michael Kanovitz
LOEVY & LOEVY
mike@loevy.com

Rachel Steinback
LOEVY & LOEVY
rachel@loevy.com

Steven E. Art
LOEVY & LOEVY
steve@loevy.com

Keith W. Vonderahe
ZIEMER STAYMAN WEITZEL & SHOULDERS
kvonderahe@zsws.com

Robert L. Burkart
ZIEMER STAYMAN WEITZEL & SHOULDERS
rburkart@zsws.com

Clifford R. Whitehead
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
cwhitehead@zsws.com