UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM HURT, | ) | |
| DEADRA HURT, | ) | |
| ANDREA HURT, | ) | |
| DEBBIE HURT, | ) | |
| | ) | No. 3:14-cv-00092-JMS-WGH |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFF VANTLIN, | ) | |
| JACK SPENCER, | ) | |
| WILLIAM ARBAUGH, | ) | |
| JASON PAGETT, | ) | |
| LARRY NELSON, | ) | |
| RICHARD BLANTON, | ) | |
| DAN DEYOUNG, | ) | |
| CITY OF EVANSVILLE, | ) | |
| MATTHEW WISE, | ) | |
| ZACHARY JONES, | ) | |
| AMY BURROWS-BECKHAM, | ) | |
| | ) | |
| *Defendants*. | ) | |

**ORDER ON MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Presently pending before the Court is Defendants City of Evansville (the "City") and

Evansville Police Department Detective Jeff Vantlin, Detective Jack Spencer, Detective William

Arbaugh, Detective Jason Pagett, Sergeant Larry Nelson, Sergeant Richard Blanton, and

Lieutenant Dan DeYoung's (collectively, the "EPD Defendants") Motion for Partial Judgment on

the Pleadings. [Filing No. 69.] Defendants Kentucky State Police Detectives Zachary Jones and

Matthew Wise ("KSP Defendants") ask to join the pending motion without objection, [Filing No.

72], and the Court grants that request. For simplicity, the Court will refer to the moving parties

collectively as "Defendants" for purposes of this motion.[1]  For the following reasons, the Court grants in part and denies in part the Motion for Partial Judgment on the Pleadings.  [Filing No. 69.]

# I.
## APPLICABLE STANDARD

Under Federal Rule of Civil Procedure 12(c), a party can move for judgment on the pleadings after the filing of the complaint and answer.  *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).  In ruling on the motion, the Court may only consider the complaint, answer, and any documents attached thereto as exhibits.  *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998).

A motion for judgment on the pleadings under Rule 12(c) "is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)."  *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014).  To survive the motion, "a complaint must 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Factual allegations in the complaint are accepted as true, but allegations that are legal conclusions are insufficient to survive the motion.  *Adams*, 742 F.3d at 728.  A complaint that pleads facts that are merely consistent with a defendant's liability "'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  In other words, to

---

[1] Defendant Amy Burrows-Beckham is alleged to be a medical examiner for the State of Kentucky. [Filing No. 1 at 5.]  She has not asked to join the pending motion and, given the varied assortment of claims and parties, the Court will not address the impact of the pending motion on Plaintiffs' claims against Ms. Burrows-Beckham.

survive dismissal, a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## II.
### BACKGROUND

The following background is set forth from the relevant allegations in Plaintiffs' Complaint, which must be taken as true at this stage of the litigation. [Filing No. 1.]

At the time of the relevant events, Plaintiff William Hurt was 18 years old, Plaintiff Deadra Hurt was 19 years old, and Plaintiff Andrea Hurt was 16 years old. [Filing No. 1 at 4.] Plaintiff Debbie Hurt is William, Deadra, and Andrea's mother—Deadra is Debbie's biological daughter, and Debbie later adopted William and Andrea. [Filing No. 1 at 3; Filing No. 1 at 5; Filing No. 71 at 8.]

Plaintiffs allege that they were wrongfully targeted, arrested, and prosecuted for the June 2012 death of their uncle, Marcus Golike, whose body was found floating in the Ohio River. [Filing No. 1 at 2.] Plaintiffs allege that Mr. Golike committed suicide by jumping from a bridge into the river. [Filing No. 1 at 3.] Plaintiffs allege that there was no reason to suspect that any of them were involved in Mr. Golike's death, and that there was no evidence found from Mr. Golike's body or the surrounding area to implicate them. [Filing No. 1 at 8.] Plaintiffs allege that Defendants "decided that the siblings murdered their uncle and set off to prove it." [Filing No. 1 at 9.]

Plaintiffs allege that Defendants spent hours harshly interrogating William, repeatedly accusing him of murdering Mr. Golike and lying to him about evidence. [Filing No. 1 at 9-10.] Plaintiffs allege that Defendants lied to William by telling him that they had forensic evidence that he participated in Mr. Golike's murder, but that they did not have that evidence. [Filing No. 1 at 10.] Plaintiffs further allege that the Defendants told William that he would be charged with

murder, sent to prison for life, and that the only way to help himself was to confess.  [Filing No. 1 at 10.]  After several hours of interrogation, William implicated himself and his siblings in Mr. Golike's death and was arrested.  [Filing No. 1 at 10-11.]

Plaintiffs allege that after securing William's false confession, Deadra was harshly interrogated and told the details to which William had confessed.  [Filing No. 1 at 11.]  Plaintiffs allege that Deadra was told she was a "heartless cold killer" who would spend the rest of her life in prison or get the death penalty if she did not confess.  [Filing No. 1 at 12.]  Plaintiffs allege that Deadra was told that her story needed to match William's confession and that she was interrogated until she began answering questions with the facts that Defendants said William had provided them.  [Filing No. 1 at 12.]

Plaintiffs allege that William and Deadra's false confessions were used to obtain a search warrant and wrongfully arrest Andrea.  [Filing No. 1 at 13.]  Plaintiffs allege that Andrea never confessed, despite also being harshly interrogated.  [Filing No. 1 at 13-14.]  Plaintiffs contend that Defendants arrested Andrea based solely on her siblings' confessions, despite the fact that Defendants knew that those confessions were false.  [Filing No. 1 at 13-14.]

Plaintiffs allege that because no extrinsic evidence supported the false confessions, Defendants fabricated evidence, including police reports and an autopsy report, to implicate Plaintiffs in Mr. Golike's death.  [Filing No. 1 at 14-16.]  Specifically, Plaintiffs allege that on the eve of William's trial, Defendants Pagett and Arbaugh created a false police report stating that William had made inculpatory statements to them while he was being transported to jail in June 2012.  [Filing No. 1 at 16.]

Plaintiffs allege that seven days after Andrea was arrested, prosecutors declined to pursue charges against her and she was released.  [Filing No. 1 at 14.]  Plaintiffs allege that prosecutors

4

ultimately dropped the charges against Deadra after the trial court suppressed her confession. [Filing No. 1 at 15.]  Plaintiffs allege that prosecutors continued to maliciously prosecute William after the trial court did not suppress his confession, but that a jury ultimately found him to be not guilty.  [Filing No. 1 at 16-17.]

Plaintiffs allege that they "each suffered considerable damages as a result of their having been wrongfully accused of a murder they did not commit."  [Filing No. 1 at 17.]  They contend that the "horrifying experience [was] made considerably worse because of their youth and their innocence." [Filing No. 1 at 17.]  They allege that Deadra was wrongfully detained for five months and that William was unlawfully detained for seven months.  [Filing No. 1 at 18.]  They allege that as a result of the Defendants' conduct, all three of them had trouble reintegrating to society and "suffered tremendous damages, including extreme emotional distress, physical pain and suffering, and reputational injury."  [Filing No. 1 at 19.]

Plaintiffs filed their Complaint in this Court on June 27, 2014.  [Filing No. 1.]  They allege multiple claims against the Defendants under 42 U.S.C. § 1983, including claims for malicious prosecution, failure to intervene, conspiracy, supervisory liability, *Monell* liability, and claims for Fourth Amendment and due process violations.  [Filing No. 1 at 19-27.]  Plaintiffs also allege state-law claims for false arrest/false imprisonment, malicious prosecution, intentional infliction of emotional distress, defamation of character, civil conspiracy, respondeat superior, and indemnification.  [Filing No. 1 at 20-32.]  Defendants now move for a partial judgment on the pleadings.  [Filing No. 69; Filing No. 72.]

### III.
### DISCUSSION

Defendants challenge Plaintiffs' claims against them on various bases.  Unfortunately, generality in the Plaintiffs' Complaint regarding which claims are against which Defendants

combined with a lack of specificity in the pending motion regarding which counts are being challenged has complicated the Court's review.  The Court will address the parties' arguments to the best extent possible, and any arguments the parties intended to raise that the Court did not address are considered waived for purposes of the pending motion.  *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 (7th Cir.2004) ("We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

### A.  Plaintiffs' Federal Claims Pursuant to § 1983

#### 1)  *Monell Claim (Count VII)*

Plaintiffs assert a *Monell* claim against the City pursuant to 42 U.S.C. § 1983.  [Filing No. 1 at 27 (Count VII).]  The City argues that Plaintiffs' *Monell* claim fails as a matter of law because Plaintiffs "do not allege that any specific custom, policy, or practice caused their injuries."  [Filing No. 70 at 4-9.]  The City contends that Plaintiffs make conclusory statements and that they do not allege more than one incident to support their claim for municipal liability.  [Filing No. 70 at 5-7.]

In response, Plaintiffs contend that they adequately pled a *Monell* claim because their Complaint alleges that they suffered numerous constitutional violations over the course of a year due to the City's failure to train, supervise, and discipline its officers.  [Filing No. 80 at 9-10.] They point to various paragraphs of the Complaint that they contend show a pattern of misconduct, including their allegations that EPD officers routinely fabricated false police reports and used unconstitutionally coercive interrogations.  [Filing No. 80 at 12-13.]  Plaintiffs also point out that they make similar allegations regarding what they claim to be the unlawful interrogation techniques used in their three separate interrogations.  [Filing No. 80 at 13.]

The City replies that Plaintiffs' *Monell* claim fails because "[n]o specific policy or widespread practice was alleged." [Filing No. 86 at 2.] The City emphasizes that one incident is not sufficient to establish a custom that can give rise to a *Monell* claim. [Filing No. 87 at 3.] Thus, the City claims that Plaintiffs' Complaint provides insufficient notice of the policy or practice being challenged and that there are no specific factual allegations regarding the failure to train, supervise, and control EPD officers. [Filing No. 86 at 4-6.]

A municipal entity is responsible under 42 U.S.C. § 1983 when the execution of its policy or custom—whether by its lawmakers or by those whose "edicts or acts may fairly be said to represent official policy"—inflicts injury. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 727 (7th Cir. 2014), *cert. denied* (citing *Monell v. Dept. of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978)). There are only three ways in which a municipality can be held liable under § 1983—"(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *League of Women Voters*, 757 F.3d at 727 (citing *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)).

To state a claim, a plaintiff must "provide some specific facts" to support the legal claim, but "[t]he degree of specificity required is not easily quantified." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citations omitted). A formulaic recitation of the cause of action is insufficient to state a claim, *id.* at 617 (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)), but "a federal court may not apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading requirements[,]" *Estate of Sims*, 506 F.3d at 514 (citing

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165 (1993)).

Before asserting their legal claims, Plaintiffs set forth 87 paragraphs of factual allegations underlying their claims and the damages they allege to have sustained as a result. [Filing No. 1 at 1-19.] Plaintiffs provide details surrounding each of their interrogations, which they contend were lengthy, threatening, and led to two of them falsely confessing to being involved in the death of their uncle. [Filing No. 1 at 9-14.] Plaintiffs further allege that because no extrinsic evidence corroborated their false confessions, Defendants fabricated evidence to implicate Plaintiffs in their uncle's death, including police reports and an autopsy report that they claim "was belied by the physical injuries sustained by Mr. Golike." [Filing No. 1 at 14-15.] For their *Monell* claim, Plaintiffs incorporate their factual allegations and allege that "in causing Plaintiffs to suffer constitutional violations described in this Complaint, the EPD Defendants were acting pursuant to the City of Evansville's policies and practices, including the specific method pursuant to which the interrogations were conducted, police reports were created, and arrests and detentions were effectuated." [Filing No. 1 at 27.] Thus, Plaintiffs contend that the City is liable. [Filing No. 1 at 27.]

The Court concludes that Plaintiffs have set forth sufficient factual allegations to pursue a *Monell* claim against the City at this stage of the litigation. The Court rejects the City's argument that Plaintiffs' *Monell* claim fails as a matter of law because they only plead a "lone incident," which is insufficient to establish a common practice of custom. [Filing No. 70 at 7.] The Court notes that there are three Plaintiffs who contend that they were treated similarly in their allegedly coercive interrogations, detentions, and prosecutions. The City does not cite case law supporting

its apparent position that these separate instances cannot constitute evidence of an unlawful policy or practice.

In sum, Plaintiffs do more than just allege boilerplate *Monell* allegations. They detail what they contend to be unlawful interrogation methods that led to false confessions, their arrests, and their unlawful detentions. Plaintiffs cite allegedly fabricated police reports and an autopsy report that they contend is unsupported by physical evidence. They contend that these constitutional violations are the result of the City's policies and practices surrounding interrogation, police reports, arrests, and detentions. [Filing No. 1 at 27.] Plaintiffs' municipal liability claim is not subject to a heightened pleading standard, *Estate of Sims*, 506 F.3d at 514, and the Court concludes that Plaintiffs have provided sufficient detail to put the City on notice of the practices for which Plaintiffs claim the City is liable. Thus, the Court denies the City's request to dismiss Plaintiffs' *Monell* claim.

### 2) *Federal Claims against Supervisor Defendants*

Plaintiffs allege that Defendants Sergeant Nelson, Sergeant Blanton, and Lieutenant DeYoung (the "Supervisor Defendants") "held supervisory positions and acted in their roles as supervisors at all times relevant to [Plaintiffs' Complaint]." [Filing No. 1 at 5.] The Supervisor Defendants argue that all of Plaintiffs' § 1983 claims against them must be dismissed because "Plaintiffs do not allege any personal, direct action" by those defendants that would subject them to liability for a § 1983 claim. [Filing No. 70 at 9-11.] They also argue that they are entitled to qualified immunity from all of Plaintiffs' § 1983 claims. [Filing No. 70 at 11-13.]

In response, Plaintiffs acknowledge that § 1983 does not allow vicarious liability but emphasize that a supervisor can be held liable if he knew about the conduct and facilitated it, either knowingly or with deliberate indifference. [Filing No. 80 at 15-16.] Plaintiffs argue that they have

adequately pled allegations against the Supervisor Defendants and that qualified immunity cannot be resolved at this stage of the proceedings.  [Filing No. 80 at 17-18.]

In reply, the Supervisor Defendants maintain that Plaintiffs make conclusory allegations regarding their involvement and, even if not, those defendants are entitled to qualified immunity. [Filing No. 86 at 7-9.]  For these reasons, the Supervisor Defendants ask the Court to dismiss all of Plaintiffs' § 1983 claims against them.

The Court will address the qualified immunity argument first.  "State officials who occupy positions with discretionary or policymaking authority and are acting in their official capacity may have qualified immunity for [§ 1983] claims alleging that the state officials violated the constitutional rights of a plaintiff."  *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000) (citations omitted).  The Seventh Circuit Court of Appeals has held that "a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds."  *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001); *see also Jacobs*, 215 F.3d at 765 (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal.").  This is because an immunity defense "usually depends on the facts of the case," and a plaintiff "is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity."  *Alvarado*, 267 F.3d at 651.  Therefore, the Court rejects the Supervisor Defendants' argument that the Court should dismiss Plaintiffs' § 1983 claims on the basis of qualified immunity at this stage of the litigation.

As for the other argument, it is well-established that § 1983 "does not establish a system of vicarious responsibility[,]" *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009), and that "a government official 'is only liable for his or her own misconduct[,]'" *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 677).  That said, supervisors "need not

participate directly in the deprivation [of civil rights] for liability to follow under § 1983." *Backes v. Village of Peoria Heights, Ill.*, 662 F.3d 866, 869-70 (7th Cir. 2011).  As long as the supervisors "know about the conduct and facilitate it, condone it, or turn a blind eye for fear of what they might see," they may be held liable.  *Id.* at 870 (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  When a plaintiff "does not allege that the supervisory officers personally caused, participated in, or had a reasonable chance to stop" the events at issue, claims against the supervisors should be dismissed.  *Golden v. Stutleen*, 535 Fed. Appx. 526, 528 (7th Cir. 2013) (citing *Atkins*, 631 F.3d at 832 (a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level")).

Plaintiffs' Complaint contains specific allegations with regard to Supervisor Defendant Sergeant Nelson.  They allege that Sergeant Nelson participated in Deadra's interrogation and executed the search warrant on the Hurts' home.  [Filing No. 1 at 11; Filing No. 1 at 13.]  Although Plaintiffs also generally allege that Sergeant Nelson was a supervisor, their allegations that he actually participated in key events forming the basis of their action are sufficient at this stage of the litigation for the § 1983 claims against Sergeant Nelson to proceed.

Plaintiffs make one factual allegation specific to Supervisor Defendant Sergeant Blanton and none with regard to Lieutenant DeYoung.  Plaintiffs allege that Sergeant Blanton "assigned Detective Vantlin to investigate" Mr. Golike's death and that Detective Vantlin, along with Detectives Wise and Jones, "decided to investigate the death [as] a murder and set out to 'solve' it."  [Filing No. 1 at 7.]  Plaintiffs do not allege that Sergeant Blanton knew anything about Detective Vantlin's investigation style or that he was deliberately indifferent to it.

The Court finds Plaintiffs' limited allegations against Sergeant Blanton and Lieutenant DeYoung insufficient to plead § 1983 liability against those defendants, even at this stage of the

proceedings.  While Plaintiffs generally allege that Sergeant Blanton and Lieutenant DeYoung knew about, facilitated, and condoned a pattern and practice of misconduct that deprived Plaintiffs of their rights, [Filing No. 1 at 26], legally conclusory allegations are insufficient to survive the motion to dismiss, *Adams*, 742 F.3d at 728 (allegations that are legal conclusions are insufficient to survive a motion to dismiss); *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements").

For these reasons, Plaintiffs' § 1983 claims against Sergeant Nelson may proceed, but Plaintiffs' § 1983 claims against Sergeant Blanton and Lieutenant DeYoung must be dismissed. If evidence of their involvement is obtained through discovery, however, Plaintiffs may move for leave to amend their complaint.

### 3)  *Federal Claims for Malicious Prosecution and Due Process*

The EPD Defendants argue that Plaintiffs' § 1983 claims of malicious prosecution (Count I) and violation of due process (Count III) are precluded by the existence of a state law remedy. [Filing No. 70 at 13-15.]  The EPD Defendants further contend that those claims are simply restatements of Plaintiffs' Fourth Amendment claim (Count II) and, thus, should be dismissed. [Filing No. 70 at 13-15.]  The EPD Defendants conclude that Plaintiffs' real remedies for their allegations are through a § 1983 claim for false arrest.  [Filing No. 70 at 15.]

In response, Plaintiffs cite Seventh Circuit case law discussed in more detail below that they contend rejects the EPD Defendants' argument "because of the inadequacy of the state law remedies in Indiana" for the claims at issue.  [Filing No. 80 at 19-20 (citations omitted).]  Plaintiffs clarify that their due process claim is only on behalf of William and Deadra, since they were the

two that allege they were deprived of their liberty between the time of their arrests and the point where they were released.  [Filing No. 80 at 20.]

In reply, the EPD Defendants raise a new argument, contending that "Plaintiffs do not allege any well-pled factual [allegations] that support the element of malice" for their claims. [Filing No. 86 at 10-11.]

The parties primarily focus on the viability of Plaintiffs' federal claim for malicious prosecution, and the Court will do the same.  To state a malicious prosecution claim under § 1983, a plaintiff must demonstrate that (1) he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty.  *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014), *cert. denied*. Under Indiana law, "the elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Id.*  Malice may be shown "by evidence of personal animosity or inferred from a complete lack of probable cause or a failure to conduct an adequate investigation under the circumstances." *Id.*

The Seventh Circuit Court of Appeals has "held that a federal claim for malicious prosecution is actionable only if the state fails to provide an adequate alternative, whether called a claim of malicious prosecution or something else." *Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013) (citations omitted).  In the absence of an adequate state remedy, a plaintiff "denied due process and deprived of liberty as a result of that denial can obtain relief under section 1983." *Id.* "[T]he elements of a federal malicious prosecution claim are the same whether the claim is based on the Fourth Amendment or on the due process clause of the Fourteenth Amendment." *Id.* at 846.

13

Although Indiana authorizes state law malicious prosecution claims, because the Indiana Tort Claims Act ("ITCA") grants absolute immunity to state law enforcement officers, the Seventh Circuit has concluded that Indiana "deprives plaintiffs who assert due process claims against state officers of an adequate alternative remedy to a federal suit." *Id.* (citing *Belcher v. Norton*, 497 F.3d 742, 751 (7th Cir. 2007)).  Thus, a plaintiff can proceed with a federal malicious prosecution claim. *Julian*, 732 F.3d at 848.  Moreover, according to the Seventh Circuit, Indiana's claims for false arrest and false imprisonment do not make those torts adequate substitutes for malicious prosecution because of the differences in available damages for those claims. *Id.* at 846-47.

The Court concludes that pursuant to *Julian*, Plaintiffs can pursue a § 1983 claim for malicious prosecution against the EPD Defendants because, under these circumstances, Indiana does not provide an adequate state law remedy against the EPD Defendants at issue.  Because arguments raised for the first time on reply are waived, *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011), the Court will not address the EPD Defendants' argument that Plaintiffs' Complaint fails to adequately plead allegations of malice with regard to this claim, [Filing No. 86 at 10-11].

As for Plaintiffs' due process claim, "[i]n order to maintain successfully a procedural due process claim, the plaintiffs must show that they were deprived of a constitutionally protected interest in life, liberty or property." *Belcher*, 497 F.3d at 750.  William and Deadra pursue a due process claim "to redress deprivations of liberty (i.e. incarceration) between the time of arrest and the point where the unlawful deprivations end[ed]." [Filing No. 80 at 20.]  Because the EPD Defendants concede that the law enforcement immunity provision of the ITCA bars a state law due process claim, [Filing No. 70 at 14-15], the Court agrees with Plaintiffs that it is possible for their federal due process to proceed at this stage of the litigation, *see Belcher*, 497 F.3d at 752-53

14

("Because we conclude that [the defendant officer] is entitled to the broad statutory immunity afforded by ITCA, we also must conclude that the statute does not provide an adequate state law remedy to the plaintiffs.").[2]

For these reasons, the Court concludes that Plaintiffs' federal claim for malicious prosecution and William and Deadra's federal claim for due process may proceed against the individual Defendants at this stage of the litigation.[3]

### 4) Federal Conspiracy Claim (Count 5)

The EPD Defendants and the KSP Defendants argue that Plaintiffs' § 1983 conspiracy claim against them must be dismissed because Plaintiffs' allegations lack the specificity or particularity required to pursue such a claim. [Filing No. 70 at 15-17 (EPD Defendants' brief); Filing No. 83 at 3-4 (KSP Defendants' brief).] They contend that Plaintiffs' general allegation that these Defendants "reached an agreement amongst themselves to frame Plaintiffs" for Mr. Golike's death is insufficient, without more, to plead a federal conspiracy claim. [Filing No. 70 at 16; Filing No. 83 at 4.]

In response, Plaintiffs emphasize that there is not a heightened pleading standard for federal conspiracy claims and that they can be proven with circumstantial, rather than direct, evidence.

---

[2] The Court disagrees with the EPD Defendants and the KSP Defendants that Plaintiffs' Complaint limits their due process claim to the denial of a fair trial and that Deadra cannot pursue a federal due process claim because she did not proceed to trial. [Filing No. 70 at 17-18; Filing No. 83 at 4-5; Filing No. 86 at 11-12.] As a basis for the due process claim, the Complaint references more than just William's trial—specifically, that Defendants "deliberately withheld exculpatory evidence, as well as fabricated false reports" that led to William and Deadra being "pursued" in the criminal matters at all. [Filing No. 1 at 22-23 (due process claim).]

[3] The KSP Defendants do not challenge Plaintiffs' federal malicious prosecution and do not challenge Deadra's federal due process claims on any basis other than her not proceeding to trial. [Filing No. 83.] Because the Court has addressed the only arguments raised, it will not address the possible effect of its conclusion later in this order that the ITCA does not apply to the KSP Defendants. See Part III.C.

[Filing No. 80 at 20-21.]   Plaintiffs point out various factual allegations that they contend sufficiently allege a pattern of misconduct that supports their conclusion that the individual defendants in this case reached an agreement to frame Plaintiffs for Mr. Golike's death.   [Filing No. 80 at 21-22.]

A plaintiff sufficiently alleges a federal claim for civil conspiracy if the complaint "alleges a pattern of harassment by several officers over a period of months."   *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012).   Even if the complaint only makes conclusory direct allegations of conspiracy, if it also alleges a scenario "in which that harassment would not have been the product of a conspiracy," a motion to dismiss the civil conspiracy claim will be denied.   *Id.*

The Court agrees with Plaintiffs that their Complaint adequately alleges a claim for civil conspiracy against the EPD and KSP Defendants.   Plaintiffs allege that after Mr. Golike was found dead, the individual defendants reached an agreement to frame Plaintiffs for the crime.   [Filing No. 1 at 24-25.]   Although Plaintiffs' direct allegations of the conspiracy are conclusory, like the factual allegations found to be sufficient to survive a motion to dismiss in *Geinosky*, Plaintiffs allege sufficient factual detail to plausibly plead a pattern of harassment for a civil conspiracy claim.   For example, Plaintiffs allege that various defendants engaged in unconstitutionally coercive interrogation techniques to obtain false confessions from William and Deadra.   [Filing No. 1 at 9-12.]   Plaintiffs allege that because no extrinsic evidence supported the false confessions, individual defendants fabricated evidence, including police reports and an autopsy report, to implicate Plaintiffs in Mr. Golike's death.   [Filing No. 1 at 14-16.]   Plaintiffs specifically allege that on the eve of William's trial, Defendants Pagett and Arbaugh created a false police report stating that William had made inculpatory statements to them while he was being transported to jail in June 2012.   [Filing No. 1 at 16.]   Plaintiffs' allegations, which the Court must assume to be

16

true for purposes of the pending motion, sufficiently allege a pattern of harassment by several officers over the course of a year that could be the product of a conspiracy by the individual Defendants to frame the Plaintiffs for their uncle's death. *Geinosky*, 675 F.3d at 749. Accordingly, the Court denies the Defendants' request to dismiss Plaintiffs' federal civil conspiracy claim.

### B. Plaintiffs' State Law Claims against the EPD Defendants

The EPD Defendants contend that all of Plaintiffs' state-law claims against them must be dismissed because they are barred by the ITCA. [Filing No. 70 at 18-19.] They raise the same argument with regard to Plaintiffs' state-law claims against the City, but acknowledge that the claim for false arrest/false imprisonment can proceed against the City. [Filing No. 70 at 20.] The EPD Defendants further contend that all of William's state-law claims against them must be dismissed because he allegedly failed to file a timely tort claim notice under Indiana law. [Filing No. 70 at 21-22.]

In response, Plaintiffs concede that their state-law claims for malicious prosecution (Count IX), intentional infliction of emotional distress (Count X), and defamation (Count XI) must be dismissed against the individual EPD Defendants and the City pursuant to the ITCA. [Filing No. 80 at 23.] Plaintiffs contend, however, that the timeliness of William's tort claim notice is an affirmative defense that is not proper to resolve on a motion to dismiss, [Filing No. 80 at 23-26], and that Plaintiffs' state law claim for false arrest/false imprisonment (Count VIII) should not be dismissed against the individual EPD Defendants or the City. [Filing No. 80 at 23.]

Plaintiffs attempt to defend the viability of their state law civil conspiracy claim, [Filing No. 80 at 27-28], but as Defendants point out, binding precedent confirms that "[i]n Indiana, there is no independent cause of action for civil conspiracy," *Rosenbaum v. White*, 692 F.3d 593, 606

(7th Cir. 2012).  Thus, the Court will dismiss Plaintiffs' state law civil conspiracy claim (Count

XII) against all Defendants as a matter of law.

### 1) False arrest/false imprisonment (Count VIII)

The parties agree that Plaintiffs' state law claim for false arrest/false imprisonment against

the City survives the pending motion.  [Filing No. 70 at 19-20; Filing No. 80 at 26; Filing No. 86

at 14-15.]  They disagree, however, regarding whether the ITCA bars Plaintiffs' claim for false

arrest/false imprisonment against the individual EPD Defendants.  [Filing No. 70 at 18-19; Filing

NO. 80 at 26-28; Filing No. 86 at 14-15.]

The ITCA provides, in relevant part, as follows:

> A lawsuit alleging that an employee acted within the scope of the employee's
> employment bars an action by the claimant against the employee personally.
> However, if the governmental entity answers that the employee acted outside
> the scope of the employee's employment, the plaintiff may amend the
> complaint and sue the employee personally.

Ind. Code § 34-13-3-5.  Another section of the ITCA provides a law enforcement immunity

provision "that shields state actors, acting within the scope of their employment, who are engaged

in the 'adoption and enforcement of or failure to adopt or enforce a law (including rules and

regulations), unless the act of enforcement constitutes false arrest or false imprisonment.'" *Belcher*

*v. Norton*, 497 F.3d 742, 751 (7th Cir. 2007) (quoting Ind. Code § 34-13-3-3(8)).

It is undisputed that Plaintiffs have sued the EPD Defendants in their individual capacities

for acts alleged to have occurred within the scope of their employment.  [Filing No. 1 at 5-6 (suing

each individual defendant in his or her individual capacity for acts taken under the color of law

within the scope of his or her employment).]  The Court agrees with Plaintiffs that because an

applicable provision of the ITCA provides "exceptions to the law enforcement immunity

provision" for "false arrest or false imprisonment," *Belcher*, 497 F.3d at 751, the ITCA does not

bar Plaintiffs' false arrest/false imprisonment claim against the individual EPD Defendants. Although the EPD Defendants acknowledge this provision of the ITCA in the context of the claim against the City, [Filing No. 70 at 20], they do not address it in the context of the false arrest/false imprisonment claim against the individual EPD Defendants. [*See* Filing No. 70 at 18-19; Filing No. 86 at 14-15.] Thus, the Court concludes that Plaintiffs' state-law claims for false arrest/false imprisonment (Count VIII) may proceed against the individual EPD Defendants.

### 2) Timeliness of William's Tort Claim Notice

The EPD Defendants argue that all of William's state-law claims fail because he allegedly did not satisfy the notice provisions of the ITCA. [Filing No. 70 at 21-22.] They contend that because William's "loss occurred on June 28, 2012" and he was 18 years of age, "he was required to file his Notice on or before December 26, 2012." [Filing No. 70 at 22.] They further claim that William did not file his tort claim notice until May 29, 2013, which is "well past the deadline." [Filing No. 70 at 22.] The EPD Defendants attach William's tort claim notice to this motion, [Filing No. 70-1], and ask the Court to take judicial notice of it because it is allegedly a matter of public record, [Filing No. 70 at 22].

In response, the Plaintiffs argue that the timeliness of William's tort claim notice cannot be resolved as a matter of law at this stage of the litigation. [Filing No. 80 at 23-26.] They direct the Court to what they contend to be an analogous case and emphasize that the district court in that case found the timeliness of a tort claim notice to be an affirmative defense more appropriate to consider in the summary judgment context, not at the pleadings stage. [Filing No. 80 at 24-25 (citing *Antey v. Donahue*, 2013 WL 466222 (S.D. Ind. 2013)).]

In reply, the EPD Defendants again ask the Court to take judicial notice of William's tort claim notice, pointing out that William does not challenge its accuracy or validity. [Filing No. 86

at 13.] They contend that William bears the burden to prove compliance with the ITCA and that

he has not done so. [Filing No. 86 at 14.] The EPD Defendants do not attempt to distinguish *Antey*

in their reply, instead ignoring Plaintiffs' arguments regarding the similarity of the cases. [Filing

No. 86 at 13-14.]

The ITCA provides that a claim against a political subdivision is barred unless notice is

filed with the governing body of that political subdivision within 180 days from when the loss

occurs. Ind. Code § 34–13–3–8. The plaintiff in *Antey* filed various claims against an individual

officer and the City of Evansville, stemming from the officer's investigation into a domestic

disturbance. 2013 WL 466222, at *1. Like the EPD Defendants in the matter at hand, the *Antey*

defendants filed a motion for judgment on the pleadings and attached the plaintiff's tort claim

notice, arguing that the notice was untimely and that the district court should enter judgment in

favor of the defendants on the plaintiff's state-law claims. *Id.* at *3-4. The district court denied

the request to consider the tort claim notice, concluding that it would convert the pending motion

into a summary judgment motion. *Id.* at *3. With regard to arguing untimeliness at the pleadings

stage, *Antey* concluded as follows:

> The purpose of a 12(c) motion is to test the sufficiency of the plaintiff's complaint
> and identify defects in a plaintiff's claim, not the presence of a defendant's
> affirmative defense. Plaintiffs need not anticipate and attempt to plead around all
> potential defenses. Complaints need not contain any information about defenses
> and may not be dismissed for that omission. Only where a plaintiff admits all of
> the elements of an impenetrable defense, thus pleading herself out of court, may a
> complaint that otherwise states a claim be dismissed; however, omission of facts
> from her complaint which would ultimately defeat an affirmative defense does not
> justify dismissal. The assertion that a plaintiff failed to comply with the ITCA
> notice requirement is an affirmative defense.

2013 WL 466222, at *4 (citations omitted).

This Court agrees with the conclusion in *Antey*. Even if the Court considered the tort claim

notice the EPD Defendants submit with their motion, [Filing No. 70-1], the Court cannot grant

judgment as a matter of law on the basis of its timeliness because that is an affirmative defense that Plaintiffs need not have anticipated in filing their Complaint.  As Plaintiffs point out, it is possible for the notice period to be tolled and that analysis is outside the scope of the Court's consideration at this stage of the litigation.  *Antey*, 2013 WL 466222, at *4 (citing *White v. Stuben Cnty., Ind.*, 2011 WL 4496504, at *14 (N.D. Ind. 2011)).  Because the Court will not determine the timeliness of William's tort claim notice at this stage of the litigation, the Court denies the EPD Defendants request to consider it.  The Defendants may, however, raise the timeliness issue on summary judgment should they determine it proper to do so.

### C.  Plaintiffs' State Law Claims against the KSP Defendants[4]

Plaintiffs allege that the KSP Defendants are "current or former Kentucky State Police Detectives."  [Filing No. 1 at 5.]  They further allege that each has been sued in his individual capacity and that each acted under color of law and within the scope of his employment for all actions within the scope of Plaintiffs' Complaint.  [Filing No. 1 at 5.]  The KSP Defendants admit that they "are and were Kentucky State Police officers and were acting within the course and scope of their employment at all times relevant herein."  [Filing No. 27 at 2 (KSP Defendants' Answer).]

The KSP Defendants argue that all of Plaintiffs' state-law claims against them are barred by the ITCA.  [Filing No. 83 at 5-8.]  They contend that nothing in the ITCA limits its application to Indiana law enforcement personnel and, thus, its protections should also apply to them.  [Filing No. 83 at 6.]

---

[4] In their consolidated response brief, Plaintiffs argue that the KSP Defendants waived any arguments concerning tort claim immunity by adopting the EPD Defendants' arguments on that issue without explaining why the ITCA would apply to Kentucky state actors.  [Filing No. 80 at 29.]  The KSP Defendants filed a reply brief on that issue, [Filing No. 83 at 5-8], and Plaintiffs filed a surreply on that point, [Filing No. 95].  Because the KSP Defendants and Plaintiffs had an opportunity to brief the issue, the Court rejects the waiver argument and will address the issue. [Filing No. 80 at 29.]

Plaintiffs disagree and contend that by its explicit terms, the ITCA applies only to governmental entities in Indiana. [Filing No. 95 at 2.] As support, Plaintiffs point to the statutory definitions of various terms used in the ITCA. [Filing No. 95 at 2-3.]

The ITCA "allows suits against governmental entities for torts committed by their employees but grants immunity under the specific circumstances." *Mangold ex rel. Mangold v. Indiana Dep't of Natural Res.*, 756 N.E.2d 970, 975 (Ind. 2001) (citing Ind. Code § 34-13-3-3). Whether the ITCA applies is a question of law, and the party seeking immunity bears the burden on the issue. *Mangold*, 756 N.E.2d at 975. "As a statute in derogation of the common law, the ITCA is to be construed narrowly." *Id.*; *Snyder v. Smith*, 7 F. Supp. 3d 842, 874 (S.D. Ind. 2014).

The statutory text of the ITCA provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from" certain enumerated circumstances. Ind. Code § 34-13-3-3. "Governmental entity" is defined as "the state or a political subdivision of the state." Ind. Code § 34-6-2-49 (definition "for purposes of . . . IC 34-14-3"). "State" is defined as "Indiana and its state agencies." Ind. Code § 34-6-2-140 (definition "for purposes of . . . IC 34-13-3").

The Court agrees with Plaintiffs that the definition of the terms "governmental entity" and "state" in the applicable statutes limits application of the ITCA to employees of Indiana and its state agencies. The KSP Defendants admit that they "are and were Kentucky State Police officers and were acting within the course and scope of their employment at all times relevant herein." [Filing No. 27 at 2 (KSP Defendants' Answer to Plaintiffs' allegation regarding employment)]. Thus, the Court concludes that the KSP Defendants have not met their burden to show that the ITCA bars Plaintiffs' state-law claims against them as a matter of law at this stage of the

proceedings.[5]   [Filing No. 83 at 5-8.]  While it is possible that, as the Plaintiffs acknowledge, the KSP Defendants may be able to seek statutory indemnification under Kentucky law, [Filing No. 95 at 3 (Plaintiffs' surreply citing Ky. Rev. Stat. § 16.185)], the KSP Defendants have not raised that issue and it is beyond the scope of the pending motion.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants Zachary Jones and Matthew Wise's Motion for Joinder, [Filing No. 72], and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Partial Judgment on the Pleadings, [Filing No. 69].  No final judgment shall issue at this time.  Plaintiffs are **ORDERED** to file an Initial Statement of Claims by **November 9, 2015**, setting forth which claims they intend to pursue in light of the Court's Order, specifically identifying which defendants they are pursuing each claim against.

The Court makes the following rulings on arguments presented by the parties' motions.

·   Plaintiffs' *Monell* claim against the City may proceed;

·   Plaintiffs' § 1983 claims against Supervisor Defendant Sergeant Nelson may proceed;

·   Plaintiffs' § 1983 claims against Supervisor Defendants Sergeant Blanton and Lieutenant DeYoung are dismissed;

·   Plaintiffs' § 1983 claims for malicious prosecution may proceed against the EPD and KSP Defendants;

·   William and Deadra's § 1983 due process claim may proceed against the EPD and KSP Defendants;

---

[5] This conclusion also forecloses the KSP Defendants' argument regarding the timeliness of William's tort claim notice.  [Filing No. 83 at 8-9.]  Moreover, even if the ITCA did apply to the KSP Defendants, for reasons set forth in addressing the EPD Defendants' argument, the Court will not determine the timeliness of William's tort claim notice at this stage of the proceedings.  *See* Part III.B.2.

- Plaintiffs' federal conspiracy claim may proceed against the EPD and KSP Defendants;

- Plaintiffs' state-law claims for malicious prosecution (Count IX), intentional infliction of emotional distress (Count X), and defamation (Count XI) against the EPD Defendants and the City are dismissed, pursuant to Plaintiffs' concession that it is appropriate to do so, [Filing No. 80 at 23];

- Plaintiffs' state-law claim for civil conspiracy (Count XII) is dismissed against the Defendants as a matter of law, *see, e.g.*, *Rosenbaum v. White*, 692 F.3d 593, 606 (7th Cir. 2012) ("In Indiana, there is no independent cause of action for civil conspiracy.");

- Plaintiffs' state-law claim for false arrest/false imprisonment (Count VIII) may proceed against the City and the EPD Defendants;

- The Plaintiffs' state-law claims against the KSP Defendants may proceed, except for the state law claim for civil conspiracy; and

- Plaintiffs' claims against Defendant Amy Burrows-Beckham, who is alleged to be a medical examiner for the State of Kentucky, may proceed since she did not join the pending motions.


Date: October 6, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Jason B. Bell
BELL, HESS & VAN ZANT, PLC
jbell@bhvzlaw.com

Edward A. Baylous, II
JUSTICE AND PUBLIC SAFETY CABINET
edward.baylous@ky.gov

Arthur Loevy
LOEVY & LOEVY
loevylaw@loevy.com

Cindy  Tsai
LOEVY & LOEVY
cindy@loevy.com

Jonathan I. Loevy
LOEVY & LOEVY
jon@loevy.com

Michael  Kanovitz
LOEVY & LOEVY
mike@loevy.com

Rachel  Steinback
LOEVY & LOEVY
rachel@loevy.com

Steven E. Art
LOEVY & LOEVY
steve@loevy.com

Keith W. Vonderahe
ZIEMER STAYMAN WEITZEL & SHOULDERS
kvonderahe@zsws.com

Robert L. Burkart
ZIEMER STAYMAN WEITZEL & SHOULDERS
rburkart@zsws.com

Clifford R. Whitehead
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
cwhitehead@zsws.com