**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA, EVANSVILLE DIVISION**

| | | |
|---|---|---|
| WILLIAM HURT, DEADRA HURT, ANDREA HURT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:14-cv-00092-JMS-MPB |
| | ) ) | The Honorable Jane Magnus-Stinson |
| DETECTIVES JEFF VANTLIN, et al. | ) ) ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' MOTIONS *IN LIMINE* (REDACTED)**

1

**Plaintiff's Motion *in limine* No. 1**

**To bar undisclosed expert opinions from defendants**

Plaintiffs William Hurt, Deadra Hurt and Andrea Heath, by their attorneys, respectfully move this Court for an Order *in limine* barring the Defendants from calling any non-retained so-called expert witness at trial who has not given a summary of the facts and opinions to which the witness is expected to testify per Federal Rule of Civil Procedure 26(a)(2)(C)(ii).

**A.     Defendants Should Be Barred From Calling Any Non-Retained Expert Witness Excluded by Rule 26(a)(2)(C)(ii).**

Under Rule 26(a)(2), parties must disclose the identity of any person "it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2). For experts who are not required to provide a written report pursuant to Rule 26(a)(2)(B), Rule 26(a)(2)(C) requires the proffering party to state "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). Although Defendants attempted to disclose various people as potential experts, including the Defendants themselves, under Rule 26(a)(2)(C)(ii), they did so improperly and therefore failed to make the proper disclosures.

The Defendants issued their Rule 26 disclosures on June 28, 2016. *See* Exhibit A, Defendant Wise And Jones' FRCP Expert Witness Disclosures at 1-2. In that disclosure, the KSP Defendants identified "all law enforcement officers or personnel in this case" including Defendants Wise and Jones, medical examiner Dr. Burrows-Beckham, as well as third-party witnesses Mike Perry and Malcolm Gwinn as experts. *Id*. Defendants fail to even identify the universe of people this disclosure might encompass – "all law enforcement officers or personnel in this case" is incredibly broad.

2

Moreover, even as to the five people specifically identified in this disclosure – Dr. Burrows-Beckham, Defendants Wise and Jones, and prosecutors Perry and Gwinn, the KSP Defendants omit a summary of the underlying facts and opinions these witnesses would rely upon in their purported expert testimony—a violation of Rule 26(a)(2)(C)(ii). Instead, they offer the vague description that such witnesses will "comment upon the opinions of lay and expert witnesses, the evidence in this case, and . . . their deposition testimony and criminal trial testimony" as well as, in Burrows-Beckham and Perry's case, opinions discussed in their autopsy report and depositions, respectively. *Id.* Shortly after receiving these disclosures, Plaintiffs' counsel identified these deficiencies to Defendants and sought supplementation. *See* Exhibit B, Kleinhaus Email of July 7, 2016 to Bell. In this correspondence, Plaintiffs' counsel emphasized that a general citation to deposition testimony "does not identify a single opinion or the factual basis for the opinion" and, subsequently, was cause to bar such witnesses from testifying. *Id.* Defendants never responded to this correspondence in any way, and provided no further clarification of the opinions these witnesses might provide.

Defendants should be barred from calling any of these witnesses in an expert capacity, and the Court should bar these witnesses from eliciting or providing opinion testimony when they testify. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

The KSP Defendants' Rule 26(a)(2) disclosure in this case is exactly the kind of vague, scattershot, catch-all disclosure that gives Plaintiffs no understanding of the opinions or testimony they might expect that courts have repeatedly barred as insufficient. Courts in this

district have previously found that a summary consisting of a vague, single sentence connecting

the witness to the case to be insufficient under Rule 26(a)(2)(C)(ii). *Slabaugh v. LG Elecs*. USA,

Inc., No. 1:12-CV-01020-RLY, 2015 WL 1396606, at *3 (S.D. Ind. Mar. 26, 2015) ("Plaintiffs

need not outline each opinion in detail, but they must *summarize* them.") (emphasis in original).

In fact, courts have explicitly rejected summary disclosures that state an expert will merely

testify "consistent" with pre-existing court documents, including medical records. *Martin v.*

*Stoops Buick, Inc.*, No. 114CV00298RLYDKL, 2016 WL 4088132, at *2–3 (S.D. Ind. July 28,

2016). Neighboring courts agree and have rejected even more detailed disclosures on similar

grounds. *See, e.g.*, *Family Christian World, Inc. v. Philadelphia Indem. Ins. Co.*, No. 2:15-CV-

102-WCL-PRC, 2016 WL 3610861, at *2 (N.D. Ind. July 6, 2016) (rejecting witness where

"Defendant has only provided a general indication that the witness will testify 'within their

respective fields of expertise' accompanied by a non-exhaustive list of possible fields");

*Washington v. Tovo*, No. 2:17-CV-128, 2018 WL 2126941, at *5 (N.D. Ind. May 9, 2018)

(rejecting witness by comparing disclosure with an exemplar that specified numerical details and

factual information); *Dilley v. Holiday Acres Properties, Inc.*, No. 16-CV-91-JDP, 2017 WL

2371295, at *3 (W.D. Wis. May 31, 2017) (rejecting a detailed disclosure for ten medical experts

because it identified subject matter but not underlying facts and opinions).

The KSP Defendants' disclosure gives no hint as to what any of these witnesses might

say. Defendants have claimed that this unidentified group of law enforcement personnel has

opinions about the facts and issues in this case, that they will comment upon the opinions of

others, and that they are "experts" in some unidentified field. Ex. A, Defendant Wise And Jones'

FRCP Expert Witness Disclosures at 1. As to the prosecutors Mike Perry and Malcolm Gwinn,

Defendants offer merely that these men have professional opinions "about the facts and issues

presented in this case, issues of police procedure, and issues surrounding the prosecution of these actions." *Id.* at 2. Dr. Burrows-Beckham's is disclosed as to her "role and involvement in this case" and "consistently with her autopsy report and deposition testimony." *Id.*at 2. While that disclosure is somewhat better than those for Perry and Gwinn, it still does not pass muster under Rule 26 (a) (2). These disclosures wholly fail to satisfy the notice requirements of Rule 26(a)(2).

Plaintiffs have been prejudiced by Defendants' failure to properly disclose these witnesses as experts, since these disclosures leave Plaintiffs guessing about what the offered testimony might be and the bases for it. For this reason, testimony from any non-retained expert witness without sufficient disclosure should be barred. *See Anglin v. Sears, Roebuck and Co.*, 139 F. Supp.2d 914, 917-18 (N.D. Ill. 2001) ("Courts in the Seventh Circuit routinely bar witnesses from testifying at trial, where the witnesses have not been produced in accordance with a court's discovery deadlines, thereby impeding opposing party's opportunity to adequately prepare for trial.").

WHEREFORE, Plaintiffs respectfully requests that this Court enter an order barring Defendants from calling any non-retained expert witness at trial who has not given a summary of the facts and opinions to which the witness is expected to testify per Rule 26(a)(2)(C)(ii).

**Plaintiffs' Motion *in limine* No. 2 to Exclude All Reference to the Vanderburgh County Circuit Court's Ruling on William Hurt's Motion to Suppress**

During the criminal case against him, William Hurt's criminal defense attorney brought a motion to suppress his confession. The judge denied the motion to suppress. Defendants in this trial may seek to introduce evidence of the judge's ruling on the motion to suppress. Such evidence (or arguments about it) is entirely improper. The ruling on the motion to suppress has no probative value and poses a substantial risk of unfair prejudice. Reference to it will confuse

jurors with a sideshow about criminal court procedure and waste time. This Court should exclude all reference to it.

I.       **Background on Legal Principles**

A.  **The Judge's Ruling on the Motion to Suppress Has No Preclusive Effect**

For starters, the judge's ruling on the motion to suppress in William's case has no legal effect in these proceedings. Under Indiana law[1], a ruling on a motion to suppress has no collateral estoppel effect when the criminal defendant is later acquitted. *Paige v. City of Fort Wayne,* No. 1:09-CV-143, 2010 WL 3522526, at *5 (N.D. Ind. Sept. 2, 2010). This is because a judicial ruling only has collateral effect if the litigant had a full and fair opportunity to litigate the issue in the first proceeding and the ruling was a final judgment on the merits. *Id*. Rulings on motions to suppress are generally not final judgments because they can be reviewed on appeal. *Id.*; *Jennings v. State, 714 N.E.2d 730*, 734 (Ind. Ct. App. 1999). Of course, an acquittal of the criminal defendant prevents the defendant from having any opportunity to appeal the ruling. *Id.*; *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1022 (7th Cir.2006) (applying similar principles of collateral estoppel under Illinois law and holding that a criminal defendant who lost a motion to suppress and later had charges dropped against her before trial had no opportunity to litigate the adverse ruling and therefore the ruling had no preclusive effect) & at n. 10 (collecting cases in various states with the same holding). Because William was acquitted, he never had an opportunity to litigate the judge's adverse ruling on the motion to suppress. Accordingly, that ruling has no legal effect or significance in this case.

In practical terms, the lack of preclusive effect means that the judge's ruling in William's criminal case is not entitled to any deference by this Court and should not be read as somehow

---

[1] In keeping with the full faith and credit provisions set forth in 28 U.S.C. § 1738, this Court looks to the law in Indiana—the jurisdiction where the ruling on the motion to suppress was made—in order to determine whether collateral estoppel applies. *In Re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004).

"blessing" or condoning Defendants' conduct. For the reasons explained below, this Court must

also ensure that the jury does not interpret the judge's ruling as condoning the Defendants'

conduct (and thereby giving that ruling a preclusive effect as a factual matter).

### B.  The Judge's Ruling on the Motion to Suppress Cannot Be A Superseding Cause.

The judge's ruling denying William's motion to suppress in no way cuts off liability for

Defendants or shifts the blame for the constitutional violations to the judge. Defendants may

wish to argue (perhaps in more colloquial terms) that the judge's decision was the "superseding

cause" of the continued incarceration and criminal proceedings against William—and that if the

judge got the suppression ruling wrong then the blame belongs with the judge, not the

Defendants. That argument is foreclosed by the law.

The decisions of grand juries, prosecutors, or judges do not shift the blame from the

Defendant police officers to those legal decision-makers. "In constitutional-tort cases as in other

cases, 'a man [is] responsible for the natural consequences of his actions.'" *Jones v. City of

Chicago,* 856 F.2d 985, 993 (7th Cir. 1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 187

(1961)); *Fields v. Wharrie*, 740 F.3d 1107, 1111–12(7th Cir. 2014) ("He who creates the defect

is responsible for the injury that the defect foreseeably causes later. Nor is the only harm that

resulting from the conviction and the sentence. In the present case, as in our recent decision in

*Julian v. Hanna,* 732 F.3d 842, 847 (7th Cir. 2013), the fabrication of evidence harmed the

defendant before and not just during the trial, because it was used to help indict him."). The

Seventh Circuit has held that the use of fabricated evidence at trial is an "entirely foreseeable"

result of police officers fabricating evidence. *Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th

Cir. 2017) ("When the detectives falsified their reports of a nonexistent confession, it was

entirely foreseeable that this fabricated "evidence" would be used to convict Avery at trial for

Griffin's murder. That was, of course, the whole point of concocting the confession. An unbroken causal chain connects the acts of evidence fabrication to Avery's wrongful conviction and imprisonment.").  In other words, because use of the confession at trial was entirely foreseeable, the judge's ruling allowing use of the confession at trial was not a superseding cause which would cut off Defendants' liability. *Scottsdale Ins. Co. v. Subscription Plus, Inc.,* 299 F.3d 618, 621 (7th Cir. 2002) ("A superseding cause is something culpable that intervenes ..., some action of a third party that makes the plaintiff's injury *an unforeseeable consequence* of the defendant's negligence.") (emphasis added).

Accordingly, arguments that the prosecutors or judges are to blame for police officers' unconstitutional misconduct have been repeatedly rejected. *See, e.g., Manuel v. City of Joliet*, 137 S.Ct. 911, 919 n.8 (2017) (rejecting the argument that a grand jury indictment or preliminary hearing extinguishes a Fourth Amendment claim against an officer who make an arrest without probable cause); *Whitlock v. Brueggeman,* 682 F.3d 567, 583 (7th Cir. 2012) (prosecutor's decision to use evidence he knew was fabricated by police officers was not a superseding cause cutting off liability). Of course, this approach simply follows the ordinary principles of tort law. *Goudy v. Cummings*, 922 F.3d 834, 843 (7th Cir. 2019) ("Section 1983 liability must be understood against the background of ordinary principles of tort law, where joint and several liability is the norm. . . . We see no reason to deviate from that norm here"); *USA Group Loan Servs., Inc. v. Riley*, 82 F.3d 708, 711 (7th Cir. 1996) (joint and several liability means that a victim "can sue any of the tortfeasors for the full amount of his damages and collect that amount from the tortfeasor he has sued"). The judge's decision on the motion to suppress is not a superseding cause which would cut off or reduce Defendants' liability.

As a matter of law, Defendants may not shift blame for the confession to the judge who allowed it to be used at trial.  Just as the Defendants may not imply that the judge "blessed" Defendants' activities with his ruling (which would give it *de facto* preclusive effect), they must also not imply that the judge is to blame for the use of the confession at trial (which amounts to the argument that the judge's ruling was a superseding cause).

## II.     The Judge's Ruling on the Motion to Suppress Has No Probative Value

The only conceivable purpose for introducing the judge's ruling on the motion to suppress is to make an improper end-run around the law set forth above. Essentially, Defendants may wish introduce the judge's ruling on the motion to suppress to make a subtle argument that the jury should effectively give the judge's ruling preclusive effect by assuming that the judge approved of the Defendants' conduct and therefore this jury should too (a finding that, as explained above, the law forecloses this Court from making), or use it to find a superseding cause for the constitutional violations by blaming the judge instead of Defendants for William's continued incarceration and prosecution (also a finding that the law forecloses this Court from making). As the law above demonstrates, the judge's ruling on the motion to suppress is not considered a probative fact to which courts may assign meaning.  And if the law does not allow courts to give the judge's ruling on the motion to suppress a preclusive effect, or shift the causation analysis, then there is no reason that the jury should be permitted to do so.

The danger of allowing the jurors to hear about the judge's ruling on the motion to suppress is an obvious one and a risk that courts commonly seek to mitigate. For example, the jury in this case will not be permitted to make inferences or conclusions based on any ruling or other comment the judge may make during trial. [Filing No. 381-2 at 7], Preliminary Jury Instructions. This sensible instruction owes to a long-standing understanding of the risk that

jurors will simply try to defer to what they perceive to be the judge's opinion. Introducing the judge's ruling in the criminal case poses similar risks: the jury may be tempted to abdicate their role as factfinders and defer to an authority figure educated in the law.

To the extent that Defendants may argue that they are not introducing the judge's ruling in order to make a legal argument about collateral estoppel or causation, that is empty formalism. Whether or not they make arguments using legal terms like "collateral estoppel" or "superseding cause," the only possible use for this evidence goes to those two prohibited purposes. Accordingly, the judge's ruling on the motion to suppress in William's case must be excluded from trial.[2]

### III. Introduction of the Judge's Ruling on the Motion to Suppress Will Confuse Jurors With a Sideshow And Waste Time.

Introduction of the criminal court ruling on the motion to suppress could create juror confusion and an unnecessary sideshow focused on criminal trial court practice. These are ample reasons for the Court to bar the evidence under Federal Rule of Evidence 403. Fed. R. Evid. 403. For example, if jurors learn about the ruling on the motion to suppress in William's case, Plaintiffs will have to try to mitigate the prejudicial effect of that evidence by trying to explain (through criminal defense attorney witnesses and others) all the reasons a judge may decide to deny a motion to suppress. Jurors will then have to try to understand why Deadra's motion to suppress was granted and William's was not, or try to analyze and compare the arguments and presentations made by each of their respective criminal defense attorneys on their behalf. All of these efforts to understand the advocacy and legal reasoning in the criminal court will be incredibly confusing, distracting, boring, and a waste of time. All references to the ruling on the motion to suppress in William's case should be barred.

---

[2] To the extent that Defendants also wish to exclude the ruling on the motion to suppress in Deadra's case, which the judge granted, Plaintiffs are amenable to that approach so long as 1) the jury is told that Deadra's case was dismissed after approximately four months and 2) the ruling on William's motion to suppress is also excluded.

WHEREFORE, Plaintiffs respectfully request an order excluding all reference to the ruling on the motion to suppress in William's criminal case.

**Motion *in limine* No. 3 to Bar Evidence that the Criminal Jury Failed to Resolve**
**One Criminal Charge Against William Hurt**

William Hurt's criminal trial for the supposed murder and robbery of his uncle Marcus Golike ended with the jury acquitting him of any involvement in such a crime, if such a crime even occurred. These proceedings concluded in his favor – had they not, the Seventh Circuit would not have allowed William Hurt's federal malicious prosecution claim and other claims to proceed to trial. There was one count of his criminal case that did not end with such a clear-cut resolution – the jury could not resolve the obstruction of justice charge against William.  That the court ultimately had to declare a mistrial on this count is of no moment to these proceedings – prosecutors never retried William, and only a few weeks after the jury acquitted William of the most serious charges, prosecutors moved to dismiss the obstruction charge.

In these proceedings, neither side should be able to make reference to the court declaring a mistrial on the obstruction of justice count – the only thing the jury should know is that following trial the State dismissed the remaining obstruction claim. The intermediate outcome on this count before dismissal is irrelevant either to Plaintiffs' claims or Defendants' defenses, because ultimately the State dismissed this charge against William.  A mistrial is not a final judgment because a criminal defendant can always be retried. *Richardson v. United States*, 468 U.S. 317, 325 (1984); *United States ex rel. Young v. Lane*, 768 F.2d 834, 839 (7th Cir. 1985) ("the inability of a jury to reach a verdict "is but a waystation en route to a final judgment"). The final judgment in this case as to the obstruction count did not occur until the state moved to dismiss and the court entered that judgment. For that reason, the mistrial has no preclusive effect for either side. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

Moreover, neither side can speculate to the jury what the mistrial meant, because neither side knows the basis for the jury failing to reach a verdict on this count. Because the federal courts treat jury deliberations, with few exceptions, as a black box, there is no way for either side to know why this verdict was reached, and indeed evidence of the jury's deliberations is all but inadmissible.  See Fed. R. Evid. 606 (barring juror testimony about their mental processes concerning a verdict other than limited circumstances involving mistake, extraneous information or outside influences).

Any reference to the mistrial on this count, because either side could only speculate about why the jury could not reach a verdict, runs the serious risk of the jury receiving information that is vastly more prejudicial than probative under Rule 403. Because Defendants can articulate no reason why this evidence is relevant, this Court should exclude it.

WHEREFORE, Plaintiffs respectfully request an order barring evidence of William Hurt's jury being unable to reach a verdict as to the obstruction of justice count at his criminal trial.

### Plaintiffs' Motion *in limine* No. 4 to Bar the Testimony of Prosecutor Witnesses

Defendants may wish to offer the testimony of Malcolm Gwinn or Michael Perry, the prosecutors in Plaintiffs' criminal cases. Gwinn had a very limited role in the prosecutions—he approved charges, based solely on information contained in police reports, and without reviewing the interrogation videos. *See* Ex. C (Declaration of Malcom Gwinn) at ¶3. Perry had a more substantial role; he was the lead prosecutor against Plaintiffs, making all post-charging decisions, throughout their prosecutions.

Neither Gwinn nor Perry have any relevance as a fact witness in this case because every "fact" that they know comes from the police investigation, via police reports and discussions with police officers. *Id.* All of that testimony is classic hearsay and should be barred.

Gwinn and Perry are also not proper expert witness. As set forth in Plaintiffs' motion in *limine* No. 1, they were not properly disclosed as experts and should be barred from offering expert opinions on that basis alone. But even if they had been properly disclosed, the types of opinions that they can offer amount to prohibited legal conclusions about how the case should be decided. For example, testimony about whether probable cause existed to bring criminal charges against Plaintiffs or whether Plaintiffs' confessions were voluntary or involuntary would invade the province of the jury; that testimony would simply be telling the jury what to decide instead of providing evidence on which they could base their decision. The Seventh Circuit has unequivocally forbidden such legal conclusions disguised as expert testimony.

The prosecutor witnesses also should not be permitted to offer opinions on the credibility of the parties. For example, any opinion they could offer about whether they believe the Plaintiffs' confessions were true or false amounts to a credibility determination—simply telling jurors to believe Plaintiffs' or Defendants' version of events. Along those same lines, any opinions they could offer about the Defendants' conduct—whether they acted in good faith or attempted to complete a thorough investigation, etc.—would be also amount to an impermissible credibility determination. These types of opinions are improper because jurors have the sole responsibility for determining credibility.

Nor do the prosecutor witnesses have anything to add to the causation analysis—the decision to charge or continue the prosecution of the Hurts does not shield Defendants from

liability for their misconduct or constitute a superseding cause of the constitutional harms Plaintiffs suffered.

While Gwinn or Perry's testimony can offer scant probative value, the danger of unfair prejudice if the Court allows them to testify about their legal opinions related to the prosecution is grave: jurors will be tempted to abdicate their own role as factfinders and simply adopt the opinions of the prosecutors. In addition, such testimony is confusing to jurors—if the prosecutor witnesses provide their own opinions about probable cause or the voluntariness of the confessions, jurors may become confused about what their role is. And in order to explain why the prosecutors' probable cause analysis does not shield Defendants from liability, and the prosecutors themselves are not defendants in this action, Plaintiffs would have to provide complex legal arguments and information to the jury.

For all these reasons, the testimony of Gwinn and Perry must be excluded.

## Argument

### I.  The Prosecutors' Testimony Is Not Relevant or Admissible.

#### A.  Any Lay Testimony Would Be Hearsay.

Perry and Gwinn have no admissible facts to offer as lay witnesses. They have no personal knowledge of how Marcus Golike died. The only testimony they can offer about the facts is based on the police investigation—information was provided to them by Defendants in this case, rather than personally obtained by the prosecutors. In other words, all the testimony they could provide about the facts is classic hearsay. FED. R. EVID. 801 & 802.  Perry and Gwinn have no admissible testimony to provide as lay witnesses.

#### B.  The Prosecutors' Expert Opinions Are Not Helpful to the Jury Because They Amount to Improper Legal Conclusions

Perry and Gwinn have no admissible expert opinions to offer. Opinion evidence which simply tells the jury what to decide is not helpful to them; instead, it impermissibly negates their crucial role. *United States v. Wantuch*, 525 F.3d 505, 514 (7th Cir. 2008) (*"*Assertions which amount to little more than choosing up sides require exclusion for lack of helpfulness by Rule 701.*"*). For that reason,"[e]xpert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003). Although Rule 704(a) states that "[a]n opinion is not objectionable just because it embraces an ultimate issue," the Seventh Circuit has instructed that "Rules 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case." *Roundy's Inc. v. N.L.R.B.,*674 F.3d 638, 648 (7th Cir. 2012); *see also, King v. Kramer*, 763 F.3d 635, 646 (7th Cir. 2014). Instead, a properly instructed jury is capable of drawing a conclusion regarding legal issues without relying on the conclusory opinion of a witness. *United States v. Noel,* 581 F.3d 490, 497 (7th Cir 2009).

Because experts may not offer testimony which amounts to legal conclusions on the legal issues that will determine the outcome of the case, Perry and Gwinn should not be permitted to provide their opinions about whether probable cause existed. *See Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *6 (N.D. Ill. Aug. 19, 2016)("The Court agrees that Ryan cannot testify that there was probable cause to arrest Sanders because it is a legal conclusion, which is outcome determinative because probable cause is a necessary element of Sanders' common law malicious prosecution claim . . . Also, Ryan cannot testify to the legal standards of what constitutes probable cause, including the totality of the circumstances test . . . It is the jury's role to determine probable cause after the Court carefully instructs them on the controlling law, and thus any such legal opinions are not only inadmissible, but would have the

tendency to confuse the jury as to their role in the proceedings.") (internal citations and quotations omitted). Along those same lines, Perry and Gwinn cannot opine about the strengths or weaknesses of the criminal cases against Plaintiffs as that opinion is just an opinion about probable cause by another name—it amounts to an opinion about whether the evidence against them was sufficient.

Perry and Gwinn should also be barred from opining about the voluntariness of the confessions. Like the probable cause analysis, whether the confessions were voluntary is an element of Plaintiffs' legal claims, and Perry and Gwinn cannot simply tell jurors how to fill out the verdict form. As described in Plaintiffs' Motion *in limine* No. 2, neither the judge's decision to suppress Deadra's confession before trial, nor the judge's decision to admit William's confession at trial, has any preclusive effect in this litigation. In other words, the judges' findings about voluntariness are irrelevant. And if the judges' opinions about voluntariness are irrelevant to these proceedings, then certainly the prosecutors' opinions must be as well.

Neither Perry nor Gwinn is permitted to explain the concepts of probable cause or voluntariness to the jury (even without discussing how those concepts apply to Plaintiffs' criminal cases). That is the role of the Court's jury instructions, not an expert. *United States v. Lupton,* 620 F.3d 790, 800 (7th Cir. 2010) (expert opinion explaining the law to the jury is "a subject for the court, not for testimonial experts.") (quotation omitted); *See United States v. Johnson*, 223 F.3d 665, 671 (7th Cir.2000) ("Witnesses testify about fact, not law. When a legal proposition is relevant to the jury's consideration, the proper procedure is for the judge to instruct the jury on the proposition."). Thus, there can be no need for the prosecutors to "set the stage" or "provide context" on the important legal issues in this case—that is what the jury instructions are for.

In sum, Perry and Gwinn should not be permitted to opine on probable cause, the voluntariness of the confessions, the strengths or weaknesses of the cases against Plaintiffs, or any other legal concept. Their opinions cannot help the jury because they seek to tell the jury what to decide.

### C.  Perry and Gwinn may not give opinions that amount to credibility determinations.

Perry and Gwinn should not be permitted to provide testimony which amounts to telling the jury which side to believe.  Experts are not permitted to make credibility determinations about witness testimony. *See United States v. Hall,* 165 F.3d 1095, 1107 (7th Cir. 1999) ("[T]he credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury – determining the credibility of witnesses."); *see also United States v. Scheffer,* 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) ( "Determining the weight and credibility of witness testimony [ ] has long been held to be the 'part of every case [that] belongs to the jury.' ") (citation omitted); *United States v. Longstreet,* 567 F.3d 911, 919 (7th Cir. 2009) ("it is the jury's role to determine the credibility of the witnesses and weigh the evidence."). There are many ways that the prosecutors' testimony could amount to a credibility determination. For example, the prosecutors should not be permitted to give their opinion of whether the Plaintiffs were involved in the death of Marcus Golike, whether their confessions were false, or whether they believe the police acted in good faith or sought to do a reliable investigation of Golike's death. Testimony of that kind simply tells the jury which side to believe, which is strictly prohibited. Accordingly, all testimony that amounts to a credibility determination must be barred.

### D.  Defendants May Not Seek to Shift Blame to the Prosecutors for Their Own Misconduct

Defendants should not be permitted to suggest, either through testimony from the prosecutors or any other evidence or argument offered at trial, that the prosecutors' decision to charge Plaintiffs or continue the prosecutions of Plaintiffs somehow means the prosecutors are responsible for the constitutional violations, rather than Defendants. The decisions of grand juries, prosecutors, or judges do not shift the blame from the Defendant police officers to those legal decision-makers. "In constitutional-tort cases as in other cases, 'a man [is] responsible for the natural consequences of his actions.'" *Jones v. City of Chicago,* 856 F.2d 985, 993 (7th Cir. 1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)); *Fields v. Wharrie*, 740 F.3d 1107, 1111–12(7th Cir. 2014) ("He who creates the defect is responsible for the injury that the defect foreseeably causes later. Nor is the only harm that resulting from the conviction and the sentence. In the present case, as in our recent decision in *Julian v. Hanna,* 732 F.3d 842, 847 (7th Cir. 2013), the fabrication of evidence harmed the defendant before and not just during the trial, because it was used to help indict him."). The Seventh Circuit has held that the use of fabricated evidence at trial is an "entirely foreseeable" result of police officers fabricating evidence. *Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017) ("When the detectives falsified their reports of a nonexistent confession, it was entirely foreseeable that this fabricated "evidence" would be used to convict Avery at trial for Griffin's murder. That was, of course, the whole point of concocting the confession. An unbroken causal chain connects the acts of evidence fabrication to Avery's wrongful conviction and imprisonment."). In other words, because use of the confession at trial was entirely foreseeable, the judge's ruling allowing use of the confession at trial was not a superseding cause which would cut off Defendants' liability. *Scottsdale Ins. Co. v. Subscription Plus, Inc.,* 299 F.3d 618, 621 (7th Cir. 2002) ("A superseding cause is something culpable that intervenes ..., some action of a third party that

makes the plaintiff's injury *an unforeseeable consequence* of the defendant's negligence."). When considering a prosecutor's decision to use evidence that he knew was fabricated, the Seventh Circuit held that the prosecutor's actions were not a superseding cause. *Whitlock v. Brueggeman,* 682 F.3d 567, 583 (7th Cir. 2012) (prosecutor's decision to use evidence he knew was fabricated by police officers was not a superseding cause cutting off liability); *see also, Steidl v. Fermon*, 494 F.3d 623, 631 (7th Cir. 2007) (police officers may not blame the prosecutor for their own unconstitutional conduct in order to share in the prosecutor's immunity).

Because the law forecloses Defendants from trying to blame Perry or Gwinn for Defendants' own misconduct, Defendants should not be permitted to suggest otherwise in argument or through evidence. For instance, Defendants cannot imply in argument that the prosecutors "blessed" their conduct with their decisions to charge Plaintiffs or continue the prosecutions, nor should they make arguments that suggest the prosecutors were the final decision makers about probable cause and therefore the ones to blame instead of Defendants. Instead, all references or arguments about the prosecutors' probable cause determination should be barred. As this Court held at summary judgment, a prosecutor's decision on probable cause simply does not provide evidence in support of Defendants' position. [Filing No. 324 at 29] *citing Jones,* 856 F.2d at 994 (7th Cir. 1988).

### E.  The Prosecutors' Testimony Poses a Severe Risk of Unfair Prejudice

Even if the opinions of the prosecutors about legal concepts could somehow constitute relevant evidence under Federal Rule of Evidence 401, any probative value would be entirely outweighed by unfair prejudice, as proscribed by Federal Rule of Evidence 403. First, there is significant risk that if jurors hear arguments about the determinations of a prosecutor— a person

educated in legal analysis and jurisprudence—they will not be able to disregard that evidence in favor of their own determination. Second, allowing such arguments creates a high likelihood of juror confusion, creating a sideshow in which jurors try to understand why and how the legal issues before them relate to those decided by Perry or Gwinn, or feel they must decide if they agree with the prosecutors or not, rather than simply applying the law to the facts as required. And, of course, if jurors hear evidence that makes them wonder whether the prosecutors are truly the ones to blame for Plaintiffs' misfortunes, then in order to avoid juror confusion, it may become necessary for Plaintiffs to discuss the prosecutors' immunity from such tort claims. That, too, could be confusing for jurors. In sum, the risk of juror abdication and confusion is high, while the value of the prosecutors' testimony is quite limited..

WHEREFORE, Plaintiffs seek an order excluding the testimony of Michael Perry and Macolm Gwinn.

### Plaintiffs' Motion *in limine* No. 5 to Bar Police Reports As Substantive Evidence

Defendants may wish to rely on certain police reports or other police documents at trial. Plaintiffs object to their use as substantive evidence because they constitute impermissible hearsay. FED. R. EVID. 802.  Defendants may argue that such reports fall under the hearsay exception for business records or public records, but the Seventh Circuit held many years ago that police reports lack the necessary earmarks of reliability and trustworthiness to come under such exceptions, explaining:

> "[E]ven if memoranda such as the ones in question are regularly prepared by law enforcement officers, they lack the necessary earmarks of reliability and trustworthiness. Their source and the nature and manner of their compilation unavoidably dictate that they are inadmissible under [the hearsay exception for business records]. They are also subject to the objection that such utility as they possess relates primarily to prosecution of suspected law breakers, and only incidentally to the systematic conduct of the police business."

*United States v. Ware*, 247 F.2d 698, 700 (7th Cir. 1957).  In civil rights litigation, the Seventh

Circuit has long recognized that law enforcement reports may include self-serving statements

and therefore cannot be considered sufficiently reliable under the "business records" exception.

*Bracey v. Herringa*, 466 F.2d 702, 705 (7th Cir. 1972). In *Bracey*, an inmate sued prison guards

and the guards sought to rely on their own statements in their own reports in support of their

version of events. *Bracey,* 466 F.2d at 703. The Seventh Circuit held that such self-serving

reports lacked the trustworthiness necessary to fall under any hearsay exception. *Id.* at 5. The

public records hearsay exception has an identical requirement of reliability and trustworthiness.

FED. R. EVID. 803 (8) (B). Accordingly, the advisory committee comments on Federal Rule of

Evidence 803 to make clear that police reports are generally excluded as evidence and typically

do not fall under either the business records or public records exceptions. FED. R. EVID. 803

comments (note regarding paragraph 6 & note regarding paragraph 8 (c)); *Cf, Jordan v. Binns*,

712 F.3d 1123, 1133 (7th Cir.2013) (explaining that third-party statements in police reports do

not benefit from the "public records" exception to the hearsay rules because "the presumption of

reliability does not attach to third parties who themselves have no public duty to report" and

acknowledging that in other circumstances police reports may qualify for the public records

exception).

  Of course, there may be non-hearsay purposes for police reports or certain hearsay

exceptions may apply to portions of a report. If a police report is not being used to prove the

truth of the matter asserted, but rather to show that a police officer documented a fact, that is not

a hearsay purpose. Or a police report could be used to introduce a party admission, which

constitutes an exception to the rule against hearsay. Fed. R. Evid. 803 (d) (2). Plaintiffs suggest

that the Court rule on those narrow instances on a case by case basis.

WHEREFORE Plaintiffs respectfully request an order barring the use of police reports as substantive evidence.

**Plaintiffs' Motion *in limine* No. 6 to Bar Evidence of Prior "Bad Acts"**

Defendants may wish to introduce the prior "bad acts" of Plaintiffs or witness Harley Wade. For example, Defendants may try to insinuate that Deadra Hurt has used drugs. ███

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████  █████

None of these prior "bad acts" have any bearing on a claim or defense in the case and therefore must be excluded under Federal Rule of Evidence 401. And while there is zero probative value to these prior "bad acts," the danger of unfair prejudice is high. Jurors may be inclined to decide the case based on speculation about Plaintiffs' characters, or the purported character of witness Harley Wade. Because there is no probative value to these prior "bad acts," and a danger of unfair prejudice, they must be excluded.

I.    **Rumors of Drug Use Must Be Excluded**

In discovery, Defendants inquired at depositions about whether Deadra Hurt had ever used illegal drugs. They were largely unsuccessful on that score (one witness speculated that Deadra may have tried marijuana in her early teens, but then immediately admitted she was just repeating a rumor). And on at least one occasion, Defendant Vantlin inaccurately told an acquaintance of Deadra's that she had used methamphetamines. Such wild speculation about drug use has no place in this trial. Even if one of the Plaintiffs had used illegal drugs at some point, that has no bearing on the issues in this case. Insinuations of drug use must be excluded

---

[3] Harley Wade was a foster child in the Hurt home at the time of the Golike investigation. Defendants claimed that Wade, assisted by Plaintiffs, killed Marcus Golike.

because they are highly prejudicial. *United States v. Mojica*, 185 F.3d 780, 789 (7th Cir. 1999) (emphasizing that courts may exclude evidence of drug use "offered solely as a general character attack."); *United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007) (discussing the possibility that witness testimony will be unduly discounted once the jury hears about illegal drugs), *citing United States v. Robinson*, 956 F.2d 1388, 1397 (7th Cir. 1992) and *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987); *United States v. Mojica*, 185 F.3d 780, 789 (7th Cir. 1999). All references to illegal drug use should be barred.



**B.** ██████████████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████

█████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████████

██████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████



██████████████████████████████████████████████

████████████████████████████

WHEREFORE, Plaintiffs seek an order barring Defendants from introducing prior "bad acts" of Plaintiffs or Harley Wade, including but not limited to: any reference to illegal drug use, ████████████████████████████.

### Motion *in limine* No. 7 to Bar Evidence of Defendants' Commendations, Awards, Job Evaluations, or Projects Unrelated to Work

Defendants may seek to introduce evidence of their "good character" by reference to prior work-related commendations, awards, or performance reviews, or by referencing projects Defendants are engaged in outside of work such as volunteering, religious participation, or other unrelated associations. Plaintiffs object to this attempt to interject good character evidence into the trial. Rule 404(a) could not be clearer that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). Evidence of commendations, awards, and volunteering could not possibly be relevant to an issue in this trial other than to suggest that Defendants conducted themselves as model officers. The evidence is irrelevant for that purpose *per se.*

Courts have repeatedly barred precisely this same type of evidence in trials just like this one. *See, e.g., Charles v. Cotter,* 867 F. Supp. 648,659 n.6 (N.D. Ill. 1994) (granting motion *in limine* to bar evidence of defendant's commendations, awards, or honors, noting that "the court strongly suspects that evidence of defendants' commendations, awards or honors could only serve the improper function of providing evidence of defendants' character for the purpose of proving action in conformity therewith on the night in question"); *White v. Gerardot,* No. 1 :05-CV-382, 2008 WL 4724000, at *2 (N.D. Ind. Oct. 24, 2008) (granting motion *in limine* to bar

evidence of officer's awards as irrelevant); *Graham v. Bennett,* No. 04-2136, 2007 WL 781763, at *3 (C.D. Ill. Mar. 12, 2007) (barring evidence of officer's awards and commendations, because such "evidence would be more prejudicial than probative to the issue of whether Defendant used excessive force on the night in question. Evidence of prior commendations could serve the improper function of providing evidence of action in conformity with Defendant's prior good performance on the police force."); *Lee v. Jones*, No. 3:09 CV 19, 2015 WL 13700955, at *2 (N.D. Ind. June 23, 2015) (granting motion to bar any mention of past awards and commendations defendant may have received, and ordering the defendant to advise the court and obtain relief from the order if during the trial defendant believed the evidence warranted an exception); *Brinkley v. Santiago*, No. 11 C 6282, 2013 WL 12309671, *3 (N.D. Ill. July 1, 2013) (granting motion to bar such evidence because it "is not relevant and would amount to improper propensity evidence if allowed"). The same result should obtain here.

WHEREFORE, Plaintiffs respectfully request an order barring evidence of Defendants' commendations, awards, positive job evaluations, or unrelated associations reflecting positive community work of Defendants.

### Plaintiffs' Motion *in limine* No. 8 to Exclude Reference to Pleadings, Dismissed Parties, or Dismissed Claims

Defendants intend to offer testimony about which claims and parties have been dismissed in this action prior to trial. Defendants also apparently intend to offer pleadings from this case as exhibits at trial. There can be no probative value in such evidence. No juror will be assisted in deciding the remaining claims in the case by learning about which claims or parties were once in the case. To the contrary, such evidence could seriously confuse jurors as they try to parse the meaning of the procedural history of the case. Showing a witness the complaint in the case, or examining a witness about his or her former status as a party, would invite jurors to speculate on

the reasons that certain claims or parties are no longer in the case. Speculation is not a proper basis for the jury's decision. In order to avoid such speculation, Plaintiffs would then be forced to try to explain their counsel's litigation strategy, or the Court's rulings, which would involve legal opinions and very confusing testimony for the jury.

If Defendants intend to introduce this evidence in order to imply that Plaintiffs are litigious, that is an improper purpose. *Benders v. Bellows & Bellows, P.C.*, No. 04 C 7326, 2009 WL 1177066, at *2 (N.D. Ill. Apr. 29, 2009) (excluding evidence intended to paint plaintiff as litigious because it was more prejudicial than probative). The parties in this case are represented by counsel and decisions about pleadings and dismissals are the responsibility of counsel, not the individual parties. Moreover, the Court has made its rulings on various claims and parties; introducing pleadings, witnesses' status as dismissed parties, and dismissed claims could invite jurors to second-guess the Court's determinations.

If Defendants intend to suggest that certain of the now-dismissed defendants in fact should be a party to this action that is also improper. *See Archer Daniels Midland Co. v. Hartford Fire Ins. Co.*, 243 F.3d 369, 371-72 (7th Cir. 2011) (discussing the problem of parties trying the empty chair in a civil case). For example, former Defendant Larry Nelson is now deceased and any effort to imply that he would have approved of Defendants' conduct during the Golike investigation, or that he is to blame for any misconduct, is wholly improper. [Filing No. 223].

All reference to pleadings, witnesses' former status as parties, or dismissed claims, must be barred. *See, e.g.*, *Sturm v. Hedges*, No. 114CV00848MPBRLY, 2017 WL 11001656, at *5 (S.D. Ind. June 21, 2017) (barring reference to dismissed parties and claims); *Leaf v. Cottey*, No.

1:02-CV-433-LJM-VSS, 2005 WL 8167491, at *1 (S.D. Ind. Sept. 22, 2005) (barring reference to pleadings or dismissed claims).

WHEREFORE, Plaintiffs respectfully request an order *in limine* barring reference to pleadings, former parties to this case, and dismissed claims.

### Motion *in limine* No. 9 to Bar Individual Defendants<br>from Presenting Evidence of Financial Inability to Pay Damages

In this case, should Plaintiffs prevail and the jury award them compensatory damages against some or all Defendants, the Defendants' employers or sureties will pay any compensatory damages award against them at trial. The Seventh Circuit and courts in this district have consistently taken the position that an individual defendant is not allowed to put on evidence that he is too poor to pay a judgment when an employer or an insurance company will have the ultimate responsibility of paying. *Kemezy v. Peters*, 79 F.3d 33, 97 (7th Cir. 1996) (holding that a "defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab"); *Hill v. City of Chicago*, 2011 WL 3205304, at *4 (N.D. Ill. July 28, 2011) (noting that a defendant who improperly puts on evidence of his or her financial condition opens the door to the admission of evidence about indemnification).

The individual defendants in this case may attempt to introduce evidence and testimony to suggest that they cannot pay for the harm caused to Plaintiffs. All such evidence should be barred on the ground that it will unreasonably cause the jury to deflate a potential damages award. See *Lawson v Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998) (nothing that courts bar evidence of indemnification routinely because it has the opposite, inflationary, effect). In the event that the Court disagrees and permits the Defendants to present such arguments (or in the event that the Defendants present such evidence despite an order prohibiting the evidence), this Court should then allow Plaintiff to introduce evidence about how any judgment against the

individual defendants will be paid by someone else. *Id.* at 379 (citing cases and holding that once

a defendant "made their financial weakness the centerpiece of their testimony in the damages

phase of the trial," defendants "opened the door" and the court should have allowed the plaintiff

to point to the state's indemnification statute.")

WHEREFORE, Plaintiff respectfully requests that this Court bar any evidence or

testimony related to the individual defendants' financial inability to pay a judgment entered

against them.

RESPECTFULLY SUBMITTED,
*/s/ Theresa Kleinhaus*
*Attorneys for the Plaintiffs*
Arthur Loevy (loevylaw@loevy.com)
Jon Loevy (jon@loevy.com)
Tara Thompson (tara@loevy.com)
Theresa Kleinhaus (tess@loevy.com)
Loevy & Loevy
311 North Aberdeen, Third Floor
Chicago, Illinois 60607
(312) 243-5900 (tel)
(312) 243-5902 (fax)

## CERTIFICATE OF SERVICE

I, Theresa Kleinhaus, an attorney, hereby certify that on August 5, 2019 I served the
foregoing **PLAINTIFFS' MOTIONS *IN LIMINE*** upon all counsel of record via the CM/ECF
filing system.

/s/ Theresa Kleinhaus
*Attorney for the Plaintiffs*