UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM HURT, DEADRA HURT, and ANDREA HEATH, )<br>    *Plaintiffs*, )<br>)<br>*vs.* )<br>)<br>JEFF VANTLIN, JACK SPENCER, WILLIAM ARBAUGH, JASON PAGETT, MATTHEW WISE, and ZACHARY JONES, )<br>    *Defendants*. ) | | 3:14-cv-00092-JMS-MPB |

## ORDER

Plaintiffs William Hurt, Deadra Hurt, and Andrea Heath[1] initiated this action in June 2014, and allege that they were wrongfully targeted, arrested, and prosecuted for the death of their uncle, Marcus Golike, whose body was found in the Ohio River in June 2012. On December 13, 2019, the Court issued an Order on the parties' various Motions in Limine. [Filing No. 448.] In the Order, the Court found – among other things – that the state court judge's finding that probable cause existed for Plaintiffs' arrests is inadmissible at the trial. [Filing No. 448 at 4-5.] Defendants Matthew Wise and Zachary Jones (the "KSP Defendants") then filed a Motion to Reconsider and in the Alternative, Motion to Certify Order for Interlocutory Appeal and to Stay Pending Resolution of Proceedings, [Filing No. 450], and, similarly, Defendants Jeff Vantlin, Jack Spencer, William Arbaugh, and Jason Pagett (the "EPD Defendants") filed a Motion to Reconsider the Court's Order on Motions in Limine, Dated December 13, 2019 or, Alternatively, to Certify for Interlocutory Appeal, [Filing No. 451]. On February 6, 2020, the Court issued an Order denying Defendants' requests for an interlocutory appeal, and setting the requests for reconsideration for

---

[1] The Court will refer individually to Plaintiffs by their first names only throughout this Order.

1

oral argument at a February 20, 2020 hearing. [Filing No. 457.] The parties presented oral argument on the requests for reconsideration on February 20, 2020 and, subsequently, submitted supplemental materials pursuant to the Court's Order. [Filing No. 460; Filing No. 461; Filing No. 462; Filing No. 463.] The portions of Defendants' motions that request reconsideration are now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

Affording relief through granting a motion for reconsideration brought pursuant to Fed. R. Civ. P. 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). Rule 59 motions are for the limited purpose of "correct[ing] manifest errors of law or fact or…present[ing] newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation and quotation omitted). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedtrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

## II.
### BACKGROUND

In their Motion in Limine, the EPD Defendants moved to exclude any reference, evidence, or testimony of "[a]ny contradiction to the underlying criminal court judge's determination that…[p]robable cause existed for each Plaintiff's arrest, at the time of their respective arrests." [Filing No. 397 at 2.] Plaintiffs responded that the state court judge's determination regarding probable cause is not entitled to preclusive effect, so is inadmissible. [Filing No. 426 at 27-29.] In its December 13, 2019 Order, the Court stated:

> The finding of probable cause is especially intertwined with Plaintiffs' claims for wrongful pretrial detention and false arrest. The Seventh Circuit has held that an arrest "is constitutional if the arresting officers (1) have probable cause to arrest the person sought and (2) reasonably believe that the person arrested is the person sought." *Tibbs v. City of Chicago*, 469 F.3d 661, 664 (7th Cir. 2006) (citation and quotation omitted). The Seventh Circuit has also held, however, that when a claim under 42 U.S.C. § 1983 related to probable cause "is more accurately characterized as a challenge to the integrity of the evidence than to its sufficiency," collateral estoppel does not bar the § 1983 claim. *Schertz v. Waupaca Cty.*, 875 F.2d 578, 581 (7th Cir. 1989); *see also Brokaw v. Weaver*, 305 F.3d 660, 670 (7th Cir. 2002).
>
> Because the state court judge's finding of probable cause has no preclusive effect in this case, the Court finds that it is not relevant to the issues in this case and that its risk of prejudicial effect substantially outweighs any probative value. *Betts v. City of Chicago, Ill.*, 784 F. Supp. 2d 1020, 1032 (N.D. Ill. 2011) (granting motion in limine to preclude evidence of state court judge's finding that probable cause did not exist); *Hillard v. City of Chicago*, 2010 WL 1664941, at *5 (N.D. Ill. 2010) ("Some courts have found it appropriate to advise the jury of the disposition of a plaintiff's criminal charge in a false arrest case to prevent the jury from assuming the plaintiff was found guilty. Notifying the jury of the 'no probable cause' finding is unnecessary to meet this purpose…. There is no need to delve into the specifics of the state court disposition…. [I]ntroduction of the 'no probable cause' finding risks a substantial prejudicial effect, as the jury may equate the state court's finding with a determination as to the propriety of the defendant officers' actions. [Plaintiff] insists the court can address this concern with a limiting instruction. However, the tenuous relevance of this evidence does not outweigh the risk that it will confuse and mislead the jury").
>
> The Court finds that evidence that the state court judge found that probable cause existed for Plaintiffs' arrests is inadmissible at the trial in this case.

[Filing No. 448 at 4-5.]

### III.
#### DISCUSSION

In support of their motion, the KSP Defendants argue that the probable cause finding is relevant and that "judges and prosecutors each arrived at their own respective, independent conclusion that probable cause existed for [Plaintiffs'] arrests…." [Filing No. 450 at 4.] The KSP Defendants assert that the lack of probable cause is an essential element of Plaintiffs' false arrest, pretrial detention, and conspiracy claims. [Filing No. 450 at 6.] They also argue that the probable

3

cause finding is probative of the conspiracy claim because it shows that "these Defendants had no reason to think that a constitutional violation had occurred." [Filing No. 450 at 7.]

In support of their motion, the EPD Defendants argue that the Court should reconsider its ruling because the state court judge's determination of probable cause is relevant to Plaintiffs' false arrest claim, as prima facie evidence that probable cause existed, which may be rebutted by Plaintiff's evidence at trial. [Filing No. 451 at 3-4.] The EPD Defendants contend that the evidence described in the probable cause affidavits "did not include any of the evidence that Plaintiffs now claim was fabricated," and that "[b]y excluding such evidence, the Court's Order only allows the 'rebuttal' evidence to such presumption, including Defendants' actions during the interrogations, Mr. Golike's mental health history…, and [the] allegedly fabricated report." [Filing No. 451 at 5.] The EPD Defendants also argue that the probable cause determinations by the state court judge, the screening prosecutor, and the trial prosecutor are all relevant to William and Deadra's § 1983 claim for failure to intervene in their unlawful detention and to the issue of punitive damages. [Filing No. 451 at 5.] As to the failure to intervene claim, the EPD Defendants argue that all information known to them – including that a state court judge had found there was probable cause to arrest Plaintiffs – should be presented to the jury in order for them to determine whether the EPD Defendants knew a constitutional violation was committed when William and Deadra were being detained. [Filing No. 451 at 6.] They argue that they "must be able to present evidence that once William and Deadra's criminal charges were filed by the screening prosecutor and probable cause was found by the criminal court judge, [they] had no control over William and Deadra's detainment." [Filing No. 451 at 7.] As to the issue of punitive damages, the EPD Defendants argue that "each EPD Defendant's state of mind is vitally important, including whether each EPD Defendant acted reasonably, in whether the jury may assess punitive damages," and their

4

knowledge of the prosecutor's and criminal court judge's determinations of probable cause is evidence of the EPD Defendants' state of mind as well. [Filing No. 451 at 8-9.]

In response, Plaintiffs argue that "[o]fficers who commit constitutional violations are not permitted to try to avoid liability by pointing to the decisions of judges or prosecutors." [Filing No. 453 at 4.] They contend that the EPD Defendants' argument that evidence of the probable cause rulings shows why they did not try to stop Plaintiffs' detention is contrary to that principle. [Filing No. 453 at 6-7.] Plaintiffs attempt to distinguish cases relied upon by the EPD Defendants, and argue that the probable cause decisions by the state court judge or prosecutors have no probative value. [Filing No. 453 at 7-10.] They also assert that the introduction of the prosecutors' or state court judge's legal conclusions is unfairly prejudicial, and could confuse the jury. [Filing No. 453 at 10-11.] Plaintiffs note that the probable cause found to exist by the prosecutors and the state court judge was probable cause to prosecute, not probable cause to arrest in the first place. [Filing No. 453 at 11.] They argue that "[i]ntroduction of the probable cause opinions of the prosecutor or judge as somehow blessing or affirming Defendants' actions would be misleading and confusing for jurors." [Filing No. 453 at 12.] Plaintiffs rely upon an affidavit from the charging prosecutor, wherein he states that he made the decision to initiate criminal charges against William and Deadra, and decline criminal charges against Andrea, based solely on the police reports provided by the Evansville Police Department. [Filing No. 435 at 12.] Plaintiffs assert that "Defendants have it backward when they claim they were relying on [the prosecutor's] determinations. Defendants weren't relying on [the prosecutor]; he was relying on their police reports…." [Filing No. 453 at 12.]

The EPD Defendants argue in their reply that Plaintiffs do not dispute that evidence of what each EPD Defendant knew is relevant to the knowledge element of William and Deadra's

5

failure to intervene claim for the post-arrest and pre-trial detainment. [Filing No. 454 at 3-4.] They argue that Plaintiffs do not address their argument that the prosecutors' and the state court judge's determinations of probable cause are relevant to the issue of punitive damages, and reiterate their argument that they are entitled to present evidence of the state court judge's probable cause determinations as a prima facie showing that probable cause existed for Plaintiffs' arrests. [Filing No. 454 at 5-7.] The EPD Defendants state that they do not intend to introduce evidence of the state court judge's probable cause determination through expert testimony, and that "the court can instruct the jury that those determinations are not controlling on the issue of liability." [Filing No. 454 at 7.]

The KSP Defendants did not file a reply.

As the Court found in its December 13, 2019 Order, the state court judge's finding of probable cause has no preclusive effect in this case. [Filing No. 448 at 4.] The EPD Defendants do not appear to dispute that ruling, arguing instead that the probable cause finding should be admissible because: (1) they are entitled to a rebuttable presumption that probable cause existed, which Plaintiffs may rebut at trial; and (2) the probable cause finding is relevant to William and Deadra's § 1983 claims for failure to intervene in their unlawful detention, and to the issue of punitive damages. The Court addresses each argument in turn.

### A. Rebuttable Presumption Argument

First, as to Plaintiffs' false arrest claim, the EPD Defendants argue that they are entitled to a rebuttable presumption that probable cause existed for Plaintiffs' arrests, and that Plaintiffs can present contradictory evidence at trial. But the cases they cite for this proposition are significantly distinguishable in that they did not involve, and none discuss, the propriety of providing the underlying probable cause finding to a jury. *See Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th

Cir. 2019) (noting that while a finding of probable cause is normally entitled to a presumption of validity, the presumption may give way upon a showing that probable cause was unlawfully procured, but not discussing whether a jury should be informed of the probable cause decision); *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010) (Fourth Amendment claim related to whether exculpatory facts were omitted from warrant application was resolved on summary judgment, and court did not consider whether probable cause finding was admissible in jury trial); *Bennett v. Antinnucci*, 2018 WL 6067197, at *5 (N.D. Ind. 2018) (denying motion to dismiss Fourth Amendment claim brought by former Postal Service employee against special agent of the Postal Service who completed probable cause affidavit which led to charges against plaintiff; court did not discuss admissibility of probable cause determination in jury trial); *Ankh El v. Shelton*, 2017 WL 1106088, at *5 (S.D. Ind. 2017) (plaintiff presented no evidence that probable cause was obtained through false testimony, fraud, or other improper actions, so failed to rebut prima facie evidence of probable cause on summary judgment).

Indeed, a central issue in this case is about eroding the "presumption" of probable cause. The Court relied upon two decisions that – unlike any of the cases cited by the EPD Defendants – discussed whether a jury should be provided with evidence of the underlying probable cause finding. While it is true that both cases involved an underlying finding of no probable cause, the Court finds this to be a distinction without a difference. In both cases, the courts reasoned that informing a jury of the finding of no probable cause would be prejudicial. *See Betts v. City of Chicago, Ill.*, 784 F. Supp. 2d 1020, 1032 (N.D. Ill. 2011) (excluding finding of no probable cause because, among other reasons, it was more prejudicial than probative); *Hillard v. City of Chicago*, 2010 WL 1664941, at *5 (N.D. Ill. 2010) ("[I]ntroduction of the 'no probable cause' finding risks a substantial prejudicial effect, as the jury may equate the state court's finding with a determination

7

as to the propriety of the defendant officers' actions").  The same reasoning holds true for a finding that probable cause existed.  Upon learning that a state court judge (or a prosecutor) found that probable cause existed, a jury may believe that they must make the same finding.  Given that the probable cause finding has no preclusive effect, the risk of prejudice far outweighs any probative value.

### B.  Relevancy Argument

As to Plaintiffs' failure to intervene claim, Defendants set forth a theme of being entitled to present the probable cause finding because they somehow relied on that finding in determining how to act toward Plaintiffs.  But a central issue in this case is whether the basis for the probable cause finding – allegedly coerced confessions and fabricated evidence – was improper.  To allow the EPD Defendants to rely on the probable cause finding would require circular reasoning: they would be relying on the very finding that Plaintiffs claim was based on information they should have known was false.  It would also go against Seventh Circuit precedent holding that when a claim under 42 U.S.C. § 1983 related to probable cause "is more accurately characterized as a challenge to the integrity of the evidence than to its sufficiency," the probable cause finding has no preclusive effect.  *Schertz*, 875 F.2d at 581.

Further, to the extent that Defendants seek to rely on the prosecutor's determination that there was probable cause to move forward with the prosecutions of William and Deadra in order to justify their actions, the Court finds significant the Declaration of Malcolm Gwinn.  Mr. Gwinn was the Deputy Prosecutor who made the decision to initiate criminal charges against William and Deadra, and to decline to initiate charges against Andrea.  He states that he "did not do any independent investigation when making those decisions" and "relied solely on the police reports that [he] was provided by the Evansville Police Department concerning its investigation into Mr.

Golike's death." [Filing No. 453-1.] The notion that Defendants based their actions on Mr. Gwinn's charging decisions appears to be misplaced.

Finally, a close examination of Plaintiffs' claims and the alleged acts upon which they intend to rely shows that the probable cause determination by the state court judge is likely not relevant. At the February 20, 2020 hearing, the Court ordered Plaintiffs to file a Report setting forth: "(1) for their wrongful pretrial detention claim, the specific unconstitutional acts that were committed and by which Defendants; (2) for their failure to intervene in constitutional violations claim, the specific unconstitutional acts for which each Defendant failed to intervene; and (3) for their conspiracy to deprive constitutional rights claim, the specific unconstitutional acts each Defendant conspired to commit." [Filing No. 460 at 1-2.] Plaintiffs did so, [Filing No. 463], and their Report provides important context when considering whether the state court judge's probable cause determination is relevant.

The Report shows that the evidence upon which Plaintiffs will rely falls squarely within one of three categories:

- Evidence of events that occurred before the probable cause determination, including that:

    o Detectives Vantlin, Wise, and Jones allegedly used impermissible, coercive interrogation tactics during Plaintiffs' interrogations in order to procure false confessions, [Filing No. 463 at 1];

    o Detectives Vantlin, Wise, and Jones allegedly "mutually agreed" to arrest William and Deadra, despite lacking probable cause to do so, [Filing No. 463 at 1];

    o Detectives Vantlin, Wise, and Jones allegedly manufactured facts to obtain probable cause to arrest Plaintiffs, [Filing No. 463 at 1];

    o Detectives Vantlin, Wise, and Jones allegedly failed to intervene to stop one another from participating in the coercive interrogations of Plaintiffs, [Filing No. 463 at 3]; and

9

- - Detectives Vantlin, Wise, and Jones allegedly failed to intervene to stop one another from feeding facts to Plaintiffs during their interrogations, [Filing No. 463 at 3];

- Evidence fabricated or action taken by the very Defendants involved in the interrogations leading to the allegedly coerced confessions, including that:

  - after William was in custody Detective Vantlin allegedly fabricated or fed facts to William and incorporated the facts into police reports knowing the reports would be used to continue the prosecution and detention of Plaintiffs, [Filing No. 463 at 2];

  - Detective Vantlin allegedly fabricated statements and a false identification of Plaintiffs that he attributed to a Kangaroo Express convenience store clerk in an effort to continue the prosecution and detention of William and Deadra, [Filing No. 463 at 2];

  - Detectives Wise and Jones allegedly failed to intervene to stop Detective Vantlin's ongoing investigation of William and Deadra while William and Deadra were detained, [Filing No. 463 at 3];

  - Detective Vantlin allegedly failed to intervene to prevent Detective Spencer's fabrication of an inculpatory statement, [Filing No. 463 at 3]; and

  - Detective Vantlin allegedly failed to intervene to stop Detectives Arbaugh and Pagett from fabricating a false statement, [Filing No. 463 at 3]; and

- Evidence of overt acts by Defendants whose reliance on the probable cause determination would not justify those acts in any event, including that:

  - Detective Spencer allegedly fabricated an inculpatory statement, which he attributed to William in an effort to continue the prosecution and detention of William and Deadra, [Filing No. 463 at 2];

  - Detectives Arbaugh and Pagett allegedly created a police report containing a fabricated and inculpatory statement attributed to William in an effort to continue the prosecution and detention of William, [Filing No. 463 at 2];

  - Detective Arbaugh allegedly failed to intervene to stop Detective Pagett from fabricating a false statement, [Filing No. 463 at 3]; and

10

- o Detective Pagett allegedly failed to intervene to stop Detective Arbaugh from fabricating a false statement, [Filing No. 463 at 3].

These categories of evidence indicate that the state court's finding of probable cause will likely not be relevant to Defendants' liability. First, events that took place before the probable cause determination could not have been affected by that determination, making the probable cause determination irrelevant. For example, it would not make sense for Detective Wise to rely on the probable cause determination to justify his actions during his interrogation of Deadra, which took place before the probable cause determination. Second, the Defendants involved in the interrogations that led to the probable cause determination cannot use that determination to challenge or explain allegations that they fabricated evidence. For example, the probable cause determination is unrelated to the Kangaroo Express convenience store clerk's statements (and Detective Vantlin's inclusion of those statements in a police report). Finally, a defendant who did not participate in the interrogations but allegedly fabricated evidence cannot rely on the probable cause determination to justify his actions. For example, the probable cause determination would not justify Detectives Pagett and Arbaugh's alleged fabrication of a report saying that William had told them he had to "pay for what he did." Put simply, after reviewing the evidence Plaintiffs list in connection with their pretrial detention, failure to intervene, and conspiracy claims, the Court reaffirms its decision that the probable cause determination is not admissible at this time.[2]

---

[2] At first glance it may appear that the probable cause determination could be relevant to the failure to intervene and conspiracy claims. For example, Detective Arbaugh could argue that, knowing that the state court judge had already found that probable cause existed, he decided not to try to stop Detective Pagett from fabricating William's statement that he had to "pay for what he did." However, given Plaintiffs' allegations that all of the Defendants fabricated evidence or coerced confessions at one time or another, it does not seem plausible that they determined not to intervene in each other's wrongdoing because the state court judge had found that probable cause existed.

Defendants also argue that the probable cause determination is relevant to the issue of punitive damages. Based on the above, the Court is not convinced that this is the case, because the actions of Defendants on which Plaintiffs intend to rely to establish liability do not appear to be the type that would be justified by the probable cause finding. However, if the Court determines that the probable cause finding is relevant to the issue of punitive damages, such evidence can be presented to the jury only after a finding of liability, and in a separate damages phase of the trial. The potential relevancy of the probable cause finding to the issue of punitive damages does not warrant reconsideration at this juncture.[3]

In sum, Defendants have not shown that the Court committed a "manifest error of law," nor have they submitted new evidence that would warrant reconsideration of the Court's ruling on the admissibility of the state court judge's finding of probable cause for Plaintiffs' arrests. The KSP Defendants' Motion to Reconsider and in the Alternative, Motion to Certify Order for Interlocutory Appeal and to Stay Pending Resolution of Proceedings, [Filing No. 450], and the EPD Defendants' Motion to Reconsider the Court's Order on Motions in Limine Dated December 13, 2019 or, Alternatively, to Certify for Interlocutory Appeal, [Filing No. 451], are both **DENIED** to the extent that they seek reconsideration of the Court's December 13, 2019 decision.

---

[3] The Court notes that at the February 20, 2020 hearing on the pending motions, the Court ordered the KSP Defendants and the EPD Defendants to file a Report "listing cases that hold that evidence of the state court judge's probable cause finding is admissible at trial for the wrongful pretrial detention, failure to intervene in constitutional violations, and conspiracy to deprive constitutional rights claims." [Filing No. 460 at 2.] The KSP Defendants and the EPD Defendants filed their Reports, and the Court has reviewed the cases they submitted and has determined that none advance the KSP Defendants' and the EPD Defendants' arguments for reconsideration. Nearly all of the cases cited in the Reports involved the review of a ruling on a motion for summary judgment, and many of the cases related to the preclusive effect of a probable cause finding or whether the defendant was entitled to qualified immunity. None addressed whether a jury should hear evidence related to a state court judge's probable cause determination in a civil rights case. [*See* cases listed in Filing No. 461 and Filing No. 462.]

The Court's denial of Defendants' motions comes with a significant caveat: Specifically, that motions in limine are preliminary in nature, and that the Court's ruling as to the admissibility of the probable cause determination could change as trial progresses. As the Seventh Circuit Court of Appeals has explained, "a ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]. Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (citing *Luce v. United States*, 469 U.S. 38 (1984)); *see also Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("*in limine* rulings are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial"). The parties should be mindful that the Court's ruling may change, depending on how the evidence plays out at trial, and that relief from the Court's Order in Limine must be sought outside the presence of the jury.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** The KSP Defendants' Motion to Reconsider and in the Alternative, Motion to Certify Order for Interlocutory Appeal and to Stay Pending Resolution of Proceedings, [450], and the EPD Defendants' Motion to Reconsider the Court's Order on Motions in Limine Dated December 13, 2019 or, Alternatively, to Certify for Interlocutory Appeal, [451], to the extent that they seek reconsideration of the Court's December 13, 2019 decision.

Date: 7/23/2020

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**